K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
TELEPHONE 202-778-9000

Stephen G. Topetzes (Admitted *pro hac vice*)
stephen.topetzes@klgates.com
Nicole A. Baker (Admitted *pro hac vice*)
nicole.baker@klgates.com

Quarles & Brady LLP
Firm State Bar No. 00443101
One South Church Avenue
Suite 1700
Tucson, AZ  85701-1621
TELEPHONE 520-770-8700

Shannon L. Giles (#018786)
sgiles@quarles.com

*Counsel for Defendant Davis Selected Advisers,
L.P. and Davis Distributors, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| DONALD TURNER, on behalf of the DAVIS NEW YORK VENTURE FUND,<br><br>Plaintiff,<br><br>-against-<br><br>DAVIS SELECTED ADVISERS, L.P. and DAVIS DISTRIBUTORS, LLC,<br><br>Defendants. | NO. CV-08-421-TUC-JMR<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS** |

Defendants Davis Selected Advisers, L.P. ("Davis Advisers") and Davis Distributors, LLC ("Davis Distributors") respectfully submit the following Reply Memorandum of Points and Authorities in Support of their Motion to Dismiss.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  PRELIMINARY STATEMENT

Plaintiff's Memorandum of Points & Authorities Opposing Defendants' Motion to Dismiss ("Opposition" or "Opp.") articulates unavailing and previously-rejected arguments regarding claims under Section 36(b) of the Investment Company Act ("ICA"). Plaintiff seeks to avoid the following reality with respect to the common mutual fund industry practices described in the Complaint ("Compl."):  (1) No court has found that Rule 12b-1 distribution fees violate Section 36(b); (2) Courts routinely have determined that the payment of 12b-1 fees for post-sale shareholder services is permissible; and (3) There is no credible authority recognizing a private right of action under Section 48(a) of the ICA.  Accordingly, courts have dismissed such actions at the initial pleadings stage, particularly where, as here, a complaint rests substantially on generalized and non-defendant-specific allegations regarding practices that pervade the highly-regulated mutual fund industry.

## II.  The Distribution Payments Identified in the Complaint are Expressly Authorized Under the Investment Company Act

The mutual fund industry has long utilized Rule 12b-1 fees to facilitate the distribution of mutual fund shares, including the provision of "ongoing services to shareholders *after* their purchase."[1]  Compl. ¶ 11 n.1 (emphasis in original).  Such fees are reviewed by the regulators and disclosed to investors.  *See e.g.*, Davis New York Venture Fund, Statement of Additional Info. (Form 485-B), at 44-54 (Nov. 30, 2007). Nevertheless, the Complaint is riddled with generalized attacks on the industry's use of distribution fees, and in particular, the use of 12b-1 fees to facilitate post-sale shareholder services.  *See e.g.*, Compl. ¶¶ 5-6, 11 n.1, 54-57, 59, 83, 85, 104-112, 114, 116-119, 122-23, 125-29, 130-32, 135, 151-157, 170-73.[2]  Plaintiff contends that Rule 12b-1 service

---

[1]  The Complaint cites to a survey by the Investment Company Institute which found that "the overwhelming majority of mutual funds which charge 12b-1 fees" paid such fees "for post-shareholder services."  Compl. ¶ 83.  *See also* Compl. ¶¶ 84-85, 135.

[2]  Plaintiff challenges defendants' observation that the Complaint rests on generalized, broad brush attacks on industry-wide practices, rather than detailed factual

fees "are for the provision of post-sale 'shareholder services' to the account holder," and are *per se* **impermissible** because they are not primarily intended to result in the sale of fund shares.[3]  Compl. ¶ 70.  *See also* Opp. at 2 (alleging that "certain aspects of defendants' 12b-1 fees . . . [are] '*inherently excessive*'") (emphasis added); Opp. at 1 (alleging that "much of the 12b-1 fees were for services outside what is permitted to be charged for under Rule 12b-1 . . . and, thus, *inherently excessive*") (emphasis added).[4]

Thus, the first question presented under the instant motion is whether the payment of Rule 12b-1 fees to facilitate post-sale shareholder services is lawful.  This narrow legal question is appropriate to resolve on a motion to dismiss.  The answer to the question is plainly "yes."

Both the SEC and federal courts have determined that distributors may charge Rule 12b-1 service fees for post-sale services because they facilitate the "sale efforts of the company by assuring that there will be follow-up account maintenance for purchasing

allegations regarding conduct by defendants.  Opp. at 3 n.2.  Yet, his challenge is belied by the face of the Complaint, which contains numerous pages of references to studies, academic articles, or editorial statements made by industry commentators or others that have no direct bearing on the Class A shares of the Davis New York Venture Fund allegedly purchased by plaintiff.  Such generalized commentary is insufficient to state a claim under Section 36(b) of the ICA.

[3]  Even assuming merit in plaintiff's astounding claim that the widely accepted industry practice of paying shareholder service fees through 12b-1 plans contravenes Rule 12b-1, plaintiff is not suing for a violation of Section 12(b) of the ICA or Rule 12b-1, neither of which afford a private right of action. Apart from his nonexistent private secondary claim under Section 48(a), he is suing solely under a specific, limited express provision, Section 36(b). *Compare Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329 (4th Cir. 2001) ("[I]f [a] claim for general breach of fiduciary duty is to be brought, it must be done under some other section of the ICA, or alternatively under state law").

[4]  Regardless of the validity of plaintiff's "inherently excessive" theory, the cases on which plaintiff relies suggest that even an alleged "*per se* violation" of Section 36(b) must be based on a breach of fiduciary duty.  *Rohrbaugh v. Inv. Co. Institute*, No. 00-1237, 2002 U.S. LEXIS 13401, at *32 n.20 (D.D.C. July 2, 2002); *Green v. Fund Asset Mgmt., L.P.*, 19 F. Supp. 2d 227, 234-235 (D.N.J. 1998).  The Complaint does not identify sufficiently any Fund-specific conduct that could constitute a breach of fiduciary duty by Davis Distributors.

shareholders." *Yameen v. Eaton Vance Distribs., Inc.*, 394 F. Supp. 2d 350, 355 n.4 (D. Mass. 2005). *See also* SEC Release No. 30,897, 57 Fed. Reg. 30985, at 30990 (July 7, 1992); *ING Principal Prot. Funds Derivative Litig.*, 339 F. Supp. 2d 163, 167 (D. Mass. 2005) ("Rule 12b-1 . . . permits a mutual fund to compensate broker-dealers with asset-based service fees for providing shareholder services and maintaining shareholder accounts"); *Pfeiffer v. Bjurman, Barry & Assocs.*, Civ. No. 03-9741, 2004 U.S. Dist. LEXIS 16924, *4 (S.D.N.Y. Aug. 26, 2004) ("Rule 12b-1 also permits a mutual fund to use a portion of its assets to compensate broker-dealers for providing shareholder services such as maintaining shareholder accounts"). In fact, distributors are permitted to charge 12b-1 fees even after funds have closed to new investors and are not generating additional sales.[5] Courts have held expressly that "Rule 12b-1 fees are not limited to current marketing and distribution expenses." *Id.* at *36; *See also Yameen*, 394 F. Supp. 2d at 357 (stating that "Rule 12b-1 and NASD Rule 2830 are specifically designed to allow mutual funds to continue paying *sales charges* after a fund has closed to new investors") (emphasis added); *Id.* at 355 n.5 (also noting that, despite the closing of the fund, plaintiff did not "dispute that the Fund charged [a] 0.25% *service fee* to provide ongoing personal services, such as shareholder assistance, in accordance with NASD Rule 2830") (emphasis added). Therefore, contrary to plaintiff's repeated assertions, such fees are clearly lawful.

**III.  The Complaint is Devoid of Allegations to Support Plaintiff's Claim that the Rule 12b-1 Fees Paid by the Fund are "Impermissible" and Thus "Inherently Excessive."**

The second question presented by the instant motion is whether – given the fact that Rule 12b-1 permits the payment of fees for post-sale services – the Complaint contains other allegations of impermissible or excessive fees paid by the Fund in violation

---

[5]   Plaintiff's attempt to distinguish between closed mutual funds and "open" mutual funds is meaningless. NASD Rule 2830(d)(2) permits a closed fund to continue charging Rule 12b-1 fees provided they do not exceed a "specified cap." *Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567, 2006 U.S. Dist. LEXIS 1542, *36 (S.D.N.Y. Jan. 13, 2006). Closed funds, by definition, do not engage in ongoing sales and do not market or distribute shares. Conversely, "open" mutual funds continuously offer shares to investors and, therefore, continue to accumulate (and must pay for) related expenses.

of Section 36(b) that are sufficient to survive dismissal.  The answer clearly is "no."

Plaintiff seeks to avoid the *Gartenberg* analysis historically applied to claims under Rule 36(b) by asserting that "certain aspects" of the fees paid by the Davis New York Venture Fund ("Fund") are "impermissible and, thus, 'inherently excessive'" under Section 36(b).  Opp. at 2.  Even assuming, *arguendo*, plaintiff could avoid the framework prescribed by *Gartenberg* based upon such a theory, the Complaint lacks Fund-specific factual allegations that the 12b-1 fees paid by the Fund were excessive.  *See e.g.* Compl. ¶¶ 9, 10, 25, 26, 31, 70, 72, 81, 84, 97, 168.  "Plaintiff cannot state a claim sufficiently simply by alleging a legal conclusion that fees were excessive without any facts supporting that conclusion or by relying on generalizations about the securities industry and speculation." *Dumond v. Massachusetts Fin. Servs. Co.*, Civil Action No. 04-11458-GAO, 2006 U.S. Dist. LEXIS 1933, at *12 (D. Mass. Jan. 19, 2006).  *See also Gartenberg v. Merrill Lynch Asset Mgmt. Inc.,* 694 F.2d 923, 928 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983) (a plaintiff must allege all pertinent facts sufficient to establish that a fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining"); *Amron v. Morgan Stanley Inv. Adv., Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) ("[while] the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice") (internal citation omitted).[6]

Beyond general attacks concerning Rule 12b-1 fees paid by mutual funds for post-sales services, the Complaint contains only a small number of paragraphs that arguably set

---

[6] Plaintiff has misconstrued defendants' arguments concerning the SEC's and NASD's regulation of sales charges applied to mutual fund shares.  Opp. at 6-8.  Defendants did not assert, nor did they intend to assert, that distribution fees are *per se* lawful because they do not exceed the regulator-prescribed cap.  Defendants assert that plaintiff must put forth allegations sufficient to establish that the fees are excessive in relation to the services rendered.  Defendants also note that distribution fees are regulated under the comprehensive scheme authorized by Section 22(b) of the ICA.  Thus, distribution fees may be regarded as exempt from Section 36(b) pursuant to Section 36(b)(4), which expressly removes sales loads and certain other items from the ambit of Section 36(b).

forth defendant-specific allegations concerning the impermissibility or excessiveness of Rule 12b-1 fees paid by the Fund. *See e.g.,* Compl. ¶¶ 79-84, 96, 133, 145. Most notably, plaintiff broadly contends that such fees were paid to compensate broker-dealers (presumably non-party securities firms from which plaintiff and other shareholders purchased their shares) for post-sale services that the broker-dealers were "already obligated to provide." Opp. at 3. *See also* Compl. ¶¶ 10, 79-82, 84-85, 96. However, the Complaint does not identify any such broker-dealers or assert facts regarding the services for which those broker-dealers received Rule 12b-1 services fees and what post-sale services, if any, such broker-dealers were "already obligated to provide" to Fund shareholders. In short, there are no allegations on which a court could find that such fees are excessive and the product of a breach of duty.[7] These allegations do not state a claim against defendants.

Moreover, the Complaint is devoid of any allegations with respect to why the Rule 12b-1 fees paid by the Fund purportedly are excessive in relation to the services rendered. Plaintiff makes mention of defendants' use of advances in telecommunications or automated technology and alleged related efficiencies (Compl. ¶ 133); however, the Complaint contains no specific allegations with respect to the services paid for under Rule 12b-1, the costs of those services, or why the benefits of those services are disproportionately small in relation to the fees. *Gartenberg,* 694 F.2d at 928; *Goldman Sachs Mut. Funds Fee Litig.*, 2006 U.S. Dist. LEXIS 1542, at *33. Plaintiff also inserts a random allegation regarding so-called "cumulative," "carryover fees" related to share classes not purchased by plaintiff, but he fails to allege why such fees allegedly are "unlawful." *See* Compl. ¶ 145. Even assuming plaintiff had standing to assert a claim related to such alleged fees,[8] this conclusory allegation does not support a claim under

---

[7] Plaintiff identifies one example of a service that presumably should not be paid for under Rule 12b-1 – the mailing of prospectuses to current Fund shareholders. Opp. at 9. However, plaintiff does not and cannot allege in good faith that any such mailing was paid for with 12b-1 fees respecting the Fund. Plaintiff's theoretical observation does not support a claim.

[8] Plaintiff lacks standing to assert a derivative claim on behalf of shareholders of Fund classes in which he never invested, including share Classes B, C, and R. *See e.g.*, *Acosta v. Pacific Enterprises*, 950 F.2d 611, 617 (9th Cir. 1991) (plaintiff lacked standing

Section 36(b). Finally, plaintiff makes a generalized allegation that 12b-1 fees paid by the Fund are retained by an unnamed broker-dealer for non-distribution-related services. Compl. ¶ 168. Not only does plaintiff fail to allege the type or nature of the non-distribution services, but plaintiff fails to allege, and cannot allege, that any such retention of fees by an unnamed broker-dealer constitutes a violation of Section 36(b) by the defendants. In any event, his conclusory allegation is insufficient to state a claim.

### IV.  Plaintiff's Claims Do Not Survive Under *Gartenberg*

Although plaintiff generally eschews the application of the factors identified in *Gartenberg* to his claims, in the Opposition, plaintiff purports to articulate reasons why the Complaint withstands scrutiny under *Gartenberg*. As set forth in *Gartenberg*, courts consider fees to be excessive in violation of Section 36(b) only if they are "so disproportionately large that [they] bear no reasonable relationship to the services rendered." 694 F.2d at 928. *See also Krantz v. Prudential Inv. Funds Mgmt., LLC*, 305 F.3d 140, 143 (3d Cir. 2002) ("dismissal for failure to state a claim with respect to excessive compensation was appropriate since Plaintiff failed to allege any facts indicating that the fees received were disproportionate to services rendered."). Plaintiff has not, and cannot in good faith, allege facts to support such a finding.

#### a.  The nature and quality of the services provided to the shareholders

Plaintiff contends the Complaint discusses "the nature and quality of the services provided to shareholders." Opp. at 13-14. However, plaintiff fails to identify properly the nature of the services that are at issue. When discussing service fees, plaintiff vaguely describes the "services" as "activities that the broker-dealer was legally obligated to provide." Opp. at 13. *See also* Opp. at 3 (alleging that "the 12b-1 fees paid for operational and account maintenance activities that the broker-dealer was already legally obligated to provide"). Similarly, the Complaint asserts that "servicing efforts" include "ministerial, operational and compliance issues with respect to the shareholder's brokerage account, such as providing . . . account statements, confirmation of transactions, and suitability analyses," Compl. ¶ 79, "post-sale shareholder services [purportedly]

to assert claims on behalf of shareholders of retirement plans in which he did not participate).

provided by broker-dealers" and "other broker-related activities." Compl. ¶ 10.

None of these general statements would support a finding that fees were paid by the Fund in violation of a fiduciary duty. Rather than discuss the performance of the Fund, or otherwise address the nature and/or quality of services rendered by Davis Distributors, plaintiff repeatedly cites to the amount of 12b-1 and advisory fees paid by the Fund. Compl. ¶¶ 6-8, 76, 103, 136-138, 143-144; Opp. at 1, 14, 16-17, 19. Such allegations are not a substitute for the facts necessary to support a claim under Section 36(b).

### b. The profitability of the relationship with the Fund

As set forth in the Motion, profitability cannot be measured in the absence of allegations pertaining to the costs incurred in operating or distributing the Fund. *Amron*, 464 F.3d at 344-345. The Complaint is devoid of allegations regarding operating costs, net income and/or percentage of profits pertaining to distribution fees. *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 338 (S.D.N.Y. 2007).

Instead, the Complaint and Opposition merely reiterate allegations relating to the amount of distribution and advisory fees earned by Davis Distributors and Davis Advisors over several years. Compl. ¶¶ 6-8, 76, 103, 136-138, 143-144. Such allegations do not state a claim for several reasons. None of these allegations reflects the profitability of any arrangement with the Fund. Further, Section 36(b)(3) prohibits plaintiff from bringing a claim for any period prior to one year before the action was instituted; any distribution fees paid prior to that time are not germane to this action. Moreover, the advisory fees earned by Davis Advisors are not relevant, given that the Complaint does not allege that Davis Advisors violated Section 36(b).

### c. Economies of scale

The Complaint cites to studies allegedly demonstrating that "economies of scale do not exist in the mutual fund industry." Compl. ¶ 104; Opp. at 16. *See also* Comp. ¶ 105 (asserting that "[t]he existence of economies of scale as fund assets under management increase is 'folklore'"); Compl. ¶ 125 ("there are no economies of scale concerning the

total amount of fees paid by any given mutual fund to brokers").[9]  These broad pronouncements are not sufficient to state a claim against Davis Distributors.

Contrary to plaintiff's allegations, courts routinely recognize that economies of scale may exist. *See, e.g. Gartenberg*, 694 F. 2d at 930; *Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883 SI, 2005 U.S. Dist LEXIS 9625, at *12 (N.D. Cal. Mar. 7, 2005) (finding that economies of scale may exist where plaintiff discussed costs incurred by defendants, among other things).  Moreover, claims concerning economies of scale "are insufficient where there are no allegations of the costs." [10]  *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d at 338-339.  *Id.* at 339 (noting that "[a]side from non-Fund-specific, economic analysis regarding theoretical economies of scale, the [Complaint] contains no allegations as to Defendants' costs of managing the Funds").  In the Complaint, plaintiff alleges that economies of scale associated with the Fund's breakpoints[11] (which are associated with he advisory fee, rather than the distribution fee) were "immaterial as a matter of law" or non-existent, but plaintiff does not discuss the per

---

[9]   Further, assuming *arguendo*, that there were no economies of scale, at least one court found "no support for the assertion that the failure to achieve economies of scale during the period in question necessarily would require [12b-1 plans to be discontinued]." *Goldman Sachs*, 2006 U.S. Dist LEXIS 1542, at *35 n.24.

[10]   Courts also have repeatedly held that Section 36(b) does not encompass a claim that a 12b-1 plan is of insufficient or no benefit to the fund due to supposed failures to achieve economies of scale or otherwise. *See, e.g.*, *Bellikoff v. Eaton Vance Corp., 481 F.3d 110* (2d Cir. 2007) (noting allegation that the benefits of certain economies of scale were not passed along to shareholders, *id.* at 114, but rejecting Section 36(b) claim based on 12b-1 fees because one must allege excessive fees, rather than fees that might simply be described as improper and the complaint must specifically allege that the fees were so disproportionately large that they bore no relationship to the services rendered, *id.* at 118).

[11]   It is well settled that economies of scale may be achieved through the implementation of breakpoints, or "asset levels at which the fees decline." *Gallus* 497 F. Supp. 2d at 978. *Id.* at 982. ("[p]laintiffs do not dispute that breakpoints in the Funds' fee schedules served to share some economies of scale"); *Gartenberg*, 694 F.2d at 929 ("to the extent that other managers have tended 'to reduce their effective charges as the fund grows in size,' the Senate Committee noted that such a reduction represents the 'best industry practice [which] will provide a guide'").

unit or per shareholder cost of the Fund's transactions or operations. *Id.* Plaintiff also does not "identify what amount of cost savings would have been appropriate, or why the amounts shared fall outside the range that could have been negotiated at arm's length." *Gallus v. Ameriprise Fin. Inc.*, 497 F. Supp. 2d 974, 982 (D. Minn. 2007). These defects are fatal to his claims. Plaintiff does not state a claim under Section 36(b) by asserting merely that the Fund and similar funds paid the maximum amount of distribution fees permitted by the relevant NASD Rule, Opp. at 17, and therefore, that such fees are inherently excessive, given an alleged lack of "competition between advisers for fund business." Opp. at 17.

### d. Independence and conscientiousness of the Fund's outside directors

The Opposition restates allegations made in the Complaint regarding the independence and conscientiousness of the Fund's Directors. Opp. at 18-19. Those allegations are utterly insufficient to state a claim under Section 36(b). In fact, the same conclusory allegations regarding director independence have been considered and repeatedly rejected by numerous courts.

The Fund is a Maryland corporation. Therefore, Maryland state law pertaining to director independence is applicable. As noted in the Motion, courts applying Maryland law routinely have rejected broad assertions such as those made by plaintiff. Courts have dismissed cases involving allegations relating to: directors' appointment or selection; directors' financial interests; directors' service on several mutual fund boards; and/or directors' approval of the conduct at issue. *See, e.g. In re Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186, 2005 U.S. Dist. LEXIS 23203, at *13 (S.D.N.Y. Oct. 11, 2005); *Scalisi*, 380 F.3d at 141; *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 470 (D.N.J. 2005).[12] Plaintiff has failed to allege any facts relating to the Fund's independent directors that would enable him to pursue a claim under Section 36(b).[13]

---

[12] Plaintiff's assertion regarding the United States Court of Appeals for the Seventh Circuit's decision in *Jones v. Harris* is unavailing. 527 F.3d 627 (7th Cir. 2008), *reh'g denied en banc*, No. 07-1624, 2008 U.S. App. LEXIS 16857 (7th Cir. Aug. 8, 2008). Davis Distributors did not allege that the pleading standard set forth in *Jones* was the

## V. There is No Private Right of Action Under Section 48(a) of the Investment Company Act

Courts explicitly have held that there is no private right of action under Section 48(a) of the ICA. In the *American Mutual Funds Fee Litigation*, the court dismissed plaintiff's Section 48(a) claim on the grounds that "District Courts, taking direction from *Alexander v. Sandoval*, 532 U.S. 275 (2001), have uniformly held that Section 48(a) establishes no private right of action." No. CV-04-5593, 2007 U.S. Dist LEXIS 8276, at *24 (C.D. Cal. Jan. 17, 2007).[14] Nevertheless, plaintiff asserts that there is an express private right of action under Section 48(a) of the ICA. More specifically, plaintiff asserts that his Section 48(a) claim should survive because it is predicated on an alleged violation of Section 36(b) of the ICA. *See* Opp. at 21.

Plaintiff's claim lacks merit. Indeed, authorities cited by plaintiff in the Opposition flatly undermine his claim. *See, e.g., In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 260 n.5 (S.D.N.Y. 2006) (court explicitly stated there is no private right of action under Section 48(a)); *Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 688 (D.N.J. 2007) (court "adopt[ed] [another courts'] conclusion that no private right of action exists under § 48(a)," despite having held previously that liability under Section 48(a) could be predicated upon a violation of another ICA provision. *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 469. The overwhelming weight of authority holds that there are no implied or express private rights of action under Section 48(a). Accordingly, plaintiff's Second Claim for Relief should be dismissed.[15]

---

relevant standard. Rather, Davis Distributors asserted that plaintiff's claims would fail to state a claim for relief under Section 36(b) *if* the Court chose to analyze the Complaint and Motion pursuant to that pleading standard.

[13]   In addition, the ICA "contains an express presumption that mutual fund trustees and natural persons who do not own 25% of the voting securities are disinterested." *Amron,* 464 F. 3d at 344.

[14]   *See also In re Merrill Lynch Invest. Mgmt. Funds Sec. Litig.* 434 F. Supp. 2d 233, 239-240 (S.D.N.Y. 2006); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 232 (S.D.N.Y. 2005).

[15]   Plaintiff also refers to the *Dreyfus Mutual Funds Litigation*, in which the court permitted the plaintiff to pursue a claim under Section 48(a) where the claim was

-11-

## V. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Stephen G. Topetzes
Stephen G. Topetzes, Esq.
Nicole A. Baker, Esq.
K&L GATES LLP
1601 K Street, NW
Washington, D.C.  20006

- and -

Shannon L. Giles
Quarles & Brady LLP
One South Church Avenue
Suite 1700
Tucson, AZ  85701

*Counsel for Defendants Davis Selected Advisers, L.P. and Davis Distributors, LLC*

Date:  January 27, 2009

predicated on an alleged violation of Section 36(b).  428 F. Supp. 2d 342, 356 (W.D. Pa. 2005).  That case is inapposite and an outlier.  Moreover, for the reasons discussed in support of the motion, plaintiff has failed to assert a claim pursuant to Section 36(b) and his related "control person" claim therefore should be dismissed.

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of January, 2009, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing for the following CM/ECF registrants: Francis J. Balint, Jr. fbalint@bffb.com; Daniel W. Krasner, Krasner@whafh.com; and Robert B. Weintraub, Weintraub@whafh.com.

/s/ Stephen G. Topetzes
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
202-778-9000
202-778-9100 (fax)