Turner v. Davis Selected Advisers, L.P., et al.

No. CV-08-421-TUC-JMR

**LODGED: Proposed Defendants' Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint Attached**

K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
TELEPHONE 202-778-9000

Stephen G. Topetzes (Admitted *pro hac vice*)
stephen.topetzes@klgates.com
Nicole A. Baker (Admitted *pro hac vice*)
nicole.baker@klgates.com

LAW OFFICES OF SHANNON GILES, PLLC
2205 East Speedway Boulevard
Tucson, AZ  85719
TELEPHONE 520-327-1343

Shannon L. Giles (#018786)
Shannon.Giles@me.com

*Counsel for Defendants Davis Selected Advisers,
L.P. and Davis Distributors, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DONALD TURNER, on behalf of the DAVIS NEW YORK VENTURE FUND,<br><br>Plaintiff,<br><br>-against-<br><br>DAVIS SELECTED ADVISERS L.P. and DAVIS DISTRIBUTORS, LLC,<br><br>Defendants. | NO. CV-08-421-TUC-JMR<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |

Defendants hereby reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint, dckt. No. 50 (the "Opposition" or "Opp."). Defendants' Motion to Dismiss the Amended Complaint, dckt. No. 42, will be referred to as the "Motion."  This Reply uses the same abbreviations,

defined terms, and structure as the Motion.

## PRELIMINARY STATEMENT

Plaintiff effectively has abandoned his meritless § 36(b) claim for excessive advisory fees. Moreover, the claim is facially defective and almost entirely time-barred. Defendants respectfully submit that the appropriate course is to dismiss the excessive advisory fee claim in its entirety for failure to state a claim.

Plaintiff's effort to defend his § 36(b) claims relating to 12b-1 fees also fails.

First, plaintiff has no answer to the crux of defendants' standing argument: plaintiff lacks any economic interest in his claim relating to the .75% distribution fee. Article III precludes him from maintaining this claim irrespective of his standing to bring other aspects of the lawsuit and regardless of how the statutory language of § 36(b) might otherwise be construed.

Second, the Opposition is predicated largely on an anachronistic view of the pleading standards. The Opposition's extensive repetition of the Complaint's conclusory allegations cannot obscure that plaintiff simply has not met his burden under Twombly/Iqbal to allege *facts* that plausibly suggest that the 12b-1 fees were disproportionate and unrelated to the services actually rendered.

Finally, plaintiff never directly responds to defendants' argument that the plain language of § 36(b)(4) categorically removes 12b-1 fees from the scope of § 36(b). Instead, he merely refers the Court to authorities in which the issue never was addressed.

# STANDARD FOR EVALUATING SUFFICIENCY OF A COMPLAINT

Plaintiff argues that he need only comply with "notice pleading." Opp. 2. He also suggests that, because the court in In re American Funds Fee Litigation (a/k/a Corbi v. The Capital Group Co.), No. CV-04-05593 GAF (RNBx) 2007 U.S. Dist. LEXIS 8276, dckt no. 556 (C.D. Cal. Jan. 17, 2007) ("Corbi"), denied a motion to dismiss and allowed the case to proceed to trial, the same outcome should obtain here. Opp. 5-6.[1]

Apart from the differences between the allegations and arguments in each instance, plaintiff ignores that Corbi, and other earlier decisions cited in the Opposition, Opp. 11 n.6, 21 n.11, applied the then-controlling "no set of facts" pleading standard from Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Corbi, 2007 U.S. Dist. LEXIS 8276, at *12-13 (C.D. Cal. Jan. 17, 2007). The Supreme Court has since overruled that standard. See Motion at 4. The recent sea change to the pleading standard plainly mandates dismissal of plaintiff's deficient claims:

> Prior to [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)], a complaint would not be found deficient if it alleged a set of facts consistent with a claim entitling the plaintiff to relief. See [Conley v. Gibson, 355 U.S. 41, 45-46 (1957)]. Under the Court's latest pleadings cases, however, the facts alleged in a complaint must state a claim that is plausible on its face . . . [T]his is a significant change with broad-reaching implications.

---

[1] In a perplexing argument in the same paragraph, plaintiff accuses defendants of "neglect[ing] to bring the current status" of Korland v. Capital Research and Mgmt. Co., CV 08-4020, 2009 U.S. Dist. LEXIS 33937 (C.D. Cal. Feb. 10, 2009) to this Court's attention. Opp. 6. As of this writing, however, the status is simply that the initial Korland complaint was dismissed, see Motion at 3, Korland repleaded, and the case was then stayed pending the outcome of Corbi. The non-substantive developments following the dismissal of the initial pleading in Korland have no apparent bearing on this case.

Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009).

Although the Complaint includes numerous conclusory allegations that the Fund's fees are disproportionate, see Opp. 7 (noting that "the 'excessive and disproportionate'" mantra is "repeated" in at least 26 additional paragraphs), such "conclusory statements" are "not entitled to the assumption of truth." Aschroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (May 18, 2009). Moreover, the *facts* plaintiff alleges do not support a plausible Gartenberg claim, 694 F.2d 923 (2d Cir. 1982).

Also, while plaintiff characterizes Corbi as being currently submitted to the Court, Opp. 6, six days before plaintiff filed his Opposition, the Corbi court issued an opinion explaining its intent to enter judgment for defendants.[2] As noted below, the opinion resolved important aspects of the case based on legal rulings that apply equally here.

## ARGUMENT

I. THE §§ 47(b) AND 48(a) CLAIMS MUST BE DISMISSED

Plaintiff apparently concedes that he cannot maintain a claim under § 48(a) or § 47(b) absent a violation of another (substantive) provision of the Investment Company Act. See Motion at 5.

Plaintiff contends, however, that *if* the Court finds that he has successfully stated a claim under § 36(b), the Court also should find an implied right of action under § 48(a) to

---

[2] See Corbi, Master File No. CV-04-05593 GAF (RNBx), Statement of Intended Decision (C.D. Cal. Sept. 16, 2009), dckt no. 556, attached as Exhibit A to the Court's copy of the Defendants' Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint.

enable plaintiff to "add[] additional persons who may be named as defendants" on the § 36(b) claim. Opp. 34. This is meritless, even setting aside that plaintiff has not properly alleged a § 36(b) claim. In the wake of Alexander v. Sandoval, 532 U.S. 275 (2001), every court to have squarely resolved the question (including in the cases plaintiff cites[3]) has held that there is no private right of action under § 48(a) irrespective of whether plaintiff claims a primary violation of § 36(b) or some other provision of the ICA. See Motion at 5-6. If anything, the fact that plaintiff seeks to superimpose a "control person" claim upon the express, reticulated liability provisions of § 36(b) weighs against recognition of an implied private right of action in this case.[4]

With respect to his § 47(b) claim, plaintiff first observes that the Supreme Court has held that a shareholder may bring a claim under § 36(b) directly. Defendants concur.[5]

---

[3] See In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 260 n.5 (S.D.N.Y. 2006) (no private right of action under § 48(a) in a case also involving a § 36(b) claim); In re Franklin Mut. Funds Fee Litig., 478 F. Supp. 2d 677, 688 (D.N.J. 2007) (same) (subsequent opinion in case cited by plaintiff). The third opinion cited by plaintiff, Dreyfus Mutual Funds Litigation, 428 F. Supp. 2d 342, 356 (W.D. Pa. 2005), does not discuss whether an implied private right of action exists under § 48(a). After issuing its initial opinion, the Dreyfus court reconsidered its order and dismissed the complaint, including the § 48(a) claim, in its entirety. 428 F. Supp. 2d 357 (W.D. Pa. 2006).

[4] See, e.g., Tarlov v. Paine Webber Cashfund, Inc., 559 F. Supp. 429, 436-37 (D. Conn. 1983) (pre-Sandoval) ("plaintiff, by attempting to proceed against all of the defendants to this action [under sections of the ICA that do not provide for express rights of action] is attempting improperly to avoid the express limits of [§] 36(b)(3)."); Green v. Fund Asset Mgmt., L.P., 19 F. Supp. 2d 227, 233-34 (D.N.J. 1998) (similar).

[5] Contrary to plaintiff's contention that "[d]efendants d[id] not disclose" the point, Opp. 34, the Motion (at p. 6) expressly stated that § 36(b) "creates a remedy that may only

But it is simply a non sequitur then to suggest (as plaintiff does, Opp. 34-35) that a shareholder's ability to bring a § 36(b) action somehow entitles him to pursue the separate and distinct cause of action created by § 47(b). Only the Fund may bring a § 47(b) claim concerning its advisory contract or 12b-1 plans. See Motion at 6 (collecting cases).

## II. THE § 36(b) ADVISORY FEE CLAIM MUST BE DISMISSED

### A. The Advisory Fee Claim Is Almost Entirely Time-Barred

The parties agree that plaintiff is precluded from suing regarding any fees received by defendants prior to July 28, 2007. See Motion at 7; Opp. 27.

Defendants also demonstrated that plaintiff may not seek recovery for fees received by defendants after the Initial Complaint was filed on July 28, 2008. Motion at 7. Plaintiff responds that § 36(b)(3) "places no limit on the damages period going into the future." Opp. 31. The Court need not address whether in other circumstances § 36(b)(3) allows damages after the date of an initial pleading. The salient, unrebutted point here is that, while a plaintiff may be entitled to amend a pleading once as a matter of course, Opp. 32 n.16, facts accruing after suit has commenced may *only be raised by a supplemental pleading, which requires leave of court*. See Motion at 7 n.4. Plaintiff has not sought, and the Court has not granted, such leave. Accordingly, the sole issue is whether the Complaint's entirely new excessive advisory fee for the period April 2007 to April 2008 relates back to the Initial Complaint.

It clearly does not. Plaintiff labors to distinguish defendants' authorities. See Opp.

---

be enforced by a shareholder."

28-30. But the cases cited by defendants are closely on point, see Motion 8 & n.6, and plaintiff plainly cannot meet the relation back standard. More fundamentally, plaintiff apparently *agrees with defendants* that, in the context of § 36(b), the one-year look back period of § 36(b)(3) is not a statute of limitations but a substantive limitation on liability to which the relation back rule does not apply.[6] This concession means that plaintiff cannot possibly sue for damages during the one year period prior to April 2007. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citations and internal quotation marks omitted). Accordingly, absent relation back, which *benefits* plaintiffs by ameliorating the fatal effect that a statute of limitations otherwise would often have on an amended complaint, Mayle v. Felix, 545 U.S. 644, 662 (2005), the one-year look back period must be measured from the April 23, 2009 filing date of plaintiff's current Complaint – not from the filing date of the Initial Complaint. See Motion at 8.[7]

---

[6] See Opp. 3 ("[§] 36(b) governs the relevant period for the advisory fee claim, not the Fed. R. Civ. P."); Opp. 27 (similar); Opp. 28 (because "the statute itself sets the damages period, the relevant time period for this claim is not dependent upon relation back principles under Rule 15").

[7] See generally 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556-59 (2d ed. 1990) ("the date on which the original pleading was filed continues to be relevant *if the amended pleading relates back under Rule 15(c)*") (emphasis added). Plaintiff purports to distinguish In re Franklin Mut. Funds Fee Litig., 478 F. Supp. 2d 677, 684-85 (D.N.J. 2007) on the basis that the court was considering whether the relation back rule applied in the context of two entirely separate actions. Opp. 28 n.13. To the contrary, Franklin was predicated on the assumption that

### B. Plaintiff Fails to Plead a Plausible Claim for Any Time Period

Beyond the fact that most of plaintiff's new excessive advisory fee claim is time barred pursuant to § 36(b)(3), defendants respectfully submit that the entire claim should be dismissed for failure to meet the Gartenberg standard.

Plaintiff makes no serious effort to explain how the *facts* he alleges come close to pleading a plausible claim for legally excessive advisory fees under Gartenberg. Indeed, the Opposition at times suggests that the excessive advisory fee claim has no substance independent from the claim for excessive 12b-1 fees.[8] More importantly, courts have repeatedly rejected allegations substantially similar to plaintiff's. See Motion at 9-18; see also Corbi, Master File No. CV-04-05593 GAF (RNBx), Statement of Intended Decision (C.D. Cal. Sept. 16, 2009), dckt. no. 556, at 16 ("Plaintiffs again focus on the problems generated by growth, which . . . fail to address the fundamental issue of whether the nature and quality of the services performed by the [adviser] . . . were commensurate with the costs of those services").

Plaintiff also offers no explanation of how he could possibly proceed given his judicial admissions that destroy his excessive advisory fee theory. The Complaint

---

the case was a single action initiated by plaintiff Alexander and thus potentially implicating the relation back rule. 478 F. Supp. 2d at 682, 684. Plaintiff's attempt to distinguish the ING case, 369 F. Supp. 2d 163 (D. Mass 2005), see Motion at 8, is similarly inaccurate.

[8]   See Opp. 5 ("the [Complaint] expressly incorporates by reference all of the factual allegations concerning the 12b-1 claim into its advisory fee section, and then in the advisory fee section itself merely summarizes some of the facts from the 12b-1 fee section"); Opp. 11 (similar).

affirmatively indicates that: (1) the Fund's advisory fees <u>are lower</u> than those charged by two funds that plaintiff holds out as appropriate benchmarks, Motion at 15, and (2) retail shareholders pay exactly the same advisory fee as that paid by sophisticated accredited investors. <u>See</u> Motion at 16.

### III. THE § 36(b) 12b-1 FEE CLAIM MUST BE DISMISSED

Plaintiff also fails to defend his excessive 12b-1 fee claim.

#### A. Plaintiff Lacks Standing to Challenge 12b-1 Fees Other Than the Service Charge That is Assessed on Class A Shares

Plaintiff paid a front-end sales load, which he has not challenged – and indeed is expressly barred from challenging in a § 36(b) case. <u>See</u> 15 U.S.C. § 80a-35(b)(4). Because he paid a front-end load, he did not pay 12b-1 distribution fees and he therefore has no direct or indirect financial interest in the outcome of litigation relating to 12b-1 fees other than the 0.25% service fee. <u>See</u> Motion at 19-20.

While not directly disputing these premises, plaintiff argues that he has statutory standing given that he is a security holder of the fund and that § 36(b) (which was enacted long before the advent of multi-class investment companies with separate distribution plans) authorizes a suit "by a security holder of such registered investment company on behalf of such company." 15 U.S.C. § 80a-35(b). Whatever the merits of plaintiff's view of the statute, he elides the crucial point: the statute must not be applied in a manner that contravenes the Article III threshold requirement that the plaintiff must have at least an indirect financial stake in the claims he asserts. <u>See</u> Motion at 20; <u>Summers v. Earth Island Institute</u>, 129 S. Ct. 1142, 1151 (2009) ("the requirement of injury in fact is a hard

floor of Article III jurisdiction that cannot be removed by statute"); W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (statutory standing cannot be "used to avoid constitutional requirements").

Plaintiff additionally observes that the Complaint alleges that "*certain aspects* of the alleged unlawful conduct [including the advisory fee] [a]ffect all Fund shareholders jointly," and that *some* Fund activities "are not divided by the class of shares." Opp. 22 (emphasis added). This is immaterial. Defendants argue only that plaintiff has absolutely no personal stake in litigating whether the 12b-1 distribution fees assessed on share classes plaintiff does not own violate § 36(b). See generally Blum v. Yaretsky, 457 U.S. 991, 999 (1982) ("[n]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to that which he has not been subject").[9]

### B. Plaintiff Has Not Alleged Disproportionality Between the Fund's 12b-1 Fees and the Services Provided for Those Fees

#### 1. Plaintiff Must Allege Disproportionality

Yet another court has confirmed defendants' view, see Motion at 20-21, that the concept of disproportionality in this context requires a plaintiff to show that the 12b-1 fees were unrelated to the sales-related services actually provided – and not that plaintiff simply disagrees with the size of the 12b-1 fees or contends that they provided no benefit. The Corbi court rejected allegations that the adviser violated § 36(b) "by charging billions

---

[9] See also Prado-Steiman v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (for standing purposes, "each claim must be analyzed separately") (citations and internal

of dollars in Rule 12b-1 fees that were designed to promote growth and increase assets under management at a time when the American Funds were already experiencing unprecedented growth that was creating significant problems with fund management and causing fund performance to deteriorate." Corbi, Master File No. CV-04-05593 GAF (RNBx), Statement of Intended Decision (C.D. Cal. Sept. 16, 2009), dckt no. 556, at 13-14. This was "not . . . a viable theory of liability" even though plaintiff asserted that the use of the fees "did not benefit the funds." Id. at 14. Section 36(b) "addresses only the negotiation and enforcement of payment arrangements between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds." Id. (citation and internal quotation marks omitted).

### 2. Plaintiff Does Not Allege Disproportionality

Plaintiff points to no *factual* allegations in the Complaint that plausibly support his disproportionality claim. Indeed, plaintiff concedes that it "literally . . . was the case" that "the 12b-1 fees . . . were used to distribute the Fund or to provide services to the Fund and its shareholders." Opp. 7. Further, plaintiff does not dispute that substantially all of the Fund's 12b-1 payments either were made directly to unaffiliated third parties, or effectively reimbursed Distributors for expenses paid to unaffiliated third parties on the Fund's behalf. The fact that plaintiff fails to raise any challenge to the nature and quality of the distribution or post-sale shareholder services provided undermines his claims. See Motion at 22-24.

---

quotation marks omitted).

Rather than pointing to factual allegations supporting disproportionality, plaintiff repeats his baseless allegation that brokers are obligated to provide shareholder services without receiving any compensation. See, e.g., Opp. 10 n.5, 12. Plaintiff's logic would seem to render all 12b-1 fees (or at least all 12b-1 service fees) impermissible. It ignores that Rule 12b-1 and NASD Rule 2830 establish a system that was approved by the SEC through which broker-dealers are compensated by mutual funds in lieu of receiving direct commission payments from investors. See Motion at 25-27 & n.28.

Plaintiff also points to his allegations that the Fund's 12b-1 fees were large in absolute terms; larger than the advisory fee; and increased in tandem with the growth of the Fund. Opp. 11-15, 17, 19. As Corbi confirmed yet again, however, "large fund" allegations or evidence do not make out a § 36(b) claim. Cf. Motion at 12-14 (discussing such allegations in the context of advisory fees). This is especially and most obviously true in the case of 12b-1 fees, which from the adviser's standpoint, often are a "wash, offset by the cost of payments to the personnel," Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344-45 (2d Cir. 2006) (internal citation omitted), and which ensure the provision of service to each new and existing shareholder.

### C. Plaintiff and the Fund Received a Legally Sufficient Benefit

12b-1 fees allow mutual fund investors "to choose between paying distribution and service charges up front and spreading them out over a period of several years." Yameen v. Eaton Vance Distribs., Inc., 394 F. Supp. 2d 350, 354 (D. Mass. 2005); Motion at 24. Plaintiff responds that the existence of this benefit presents "a mixed question of fact and

law appropriate for trial." Opp. 10. This makes no sense. There is no possible fact issue since the Complaint itself concedes that the Fund offered multiple share classes affording investors these options. See, e.g., Compl. ¶¶ 41, 77-80, 105.

### D. Plaintiff's Disagreement with the Directors' Decision to Approve the 12b-1 Plans Does Not State a § 36(b) Claim

Plaintiff also restates his boilerplate allegations to the effect that the board lacked independence and that it could not reasonably have concluded that the 12b-1 plan would likely benefit the fund and its shareholders. Opp. 20-21. In doing so, plaintiff disregards the overwhelming weight of authority rejecting similar allegations. See Motion at 16-18. Plaintiff also fails to address defendants' authorities demonstrating that, even assuming *arguendo* that the directors somehow breached *their* duties in approving the 12b-1 plans, this cannot compensate for plaintiff's failure to allege disproportionality as required to state a § 36(b) claim for breach of the adviser's duty. See Motion at 16, 24-25.

### E. Rule 12b-1 Fees Are Outside the Ambit of § 36(b)

Plaintiff offers two erroneous responses to the alternative argument that, under the express language of § 36(b)(4), § 36(b) simply cannot be used to attack 12b-1 fees, which are now comprehensively regulated pursuant to §§ 17(d) and 22(b). See Motion at 25-27.

Plaintiff first mischaracterizes defendants' argument as a contention that 12b-1 fees that comply with the applicable regulatory regime are "*per se* lawful." Opp. 25. See also Opp. 24 (same). But defendants do not argue that a 12b-1 fee that complies with the applicable regulatory regime is necessarily lawful and permissible for all purposes. Their narrower point is that 12b-1 fees are outside the ambit of the limited right of action

-13-

afforded by § 36(b). In this and certain other respects, 12b-1 fees are the functional equivalent of front-end sales loads, which were the only type of sales charge in existence in 1970 when Congress enacted § 36(b) and which (as plaintiff apparently concedes) unquestionably are immune from attack under § 36(b). See Motion at 25-26.

Plaintiff next suggests that defendants' argument has been "expressly" rejected by "[m]any courts." Opp. 26. To the contrary, counsel knows of no published decision substantively addressing the same argument raised herein.[10] Other courts *not* addressing § 36(b)(4) but relying on *other* parts of the statute *have split* on whether § 36(b) may be used to challenge Rule 12b-1 fees.[11] But neither the Opposition nor the cases cited therein address the statutory language of § 36(b)(4), which expressly exempts from § 36(b) "sales loads" and "payments made in connection with transactions subject to [ICA § 17] or [the]

---

[10] One case noted the argument but declined to rule on it given its determination to dismiss the action on other grounds. Yameen v. Eaton Vance Distribs., Inc., 394 F. Supp. 2d 350, 358 n.9 (D. Mass. 2005).

[11] Compare, e.g., In re Oppenheimer Funds Fees Litig., 419 F. Supp. 2d 593, 597 (S.D.N.Y. 2006) (no § 36(b) claim against fund distributors for 12b-1 fees because, "under the plain language of the statute, the claim may be brought only against the Adviser Defendants") and Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 492 (N.D. Ill. 1999) (similar) with Pfeiffer v. Bjurman, Barry & Assocs., No. 03-cv-9741, 2004 WL 1903075, at *4 (S.D.N.Y. Aug. 26, 2004) (cited by plaintiff) (concluding without discussing § 36(b)(4) or § 17(d) that Rule 12b-1 fees may subject to suit under § 36(b)). A number of courts that have held or suggested that 12b-1 fees may be challenged under § 36(b), as well as the footnote in the SEC release cited by plaintiff, Opp. 25, have looked primarily to Meyer v. Oppenheimer Mgmt. Corp., 764 F.2d 76, 83 (2d Cir. 1985) and Meyer v. Oppenheimer Mgmt. Corp., 895 F.2d 861, 866 (2d Cir. 1990). But neither case had occasion to consider the limitations imposed by §§ 36(b)(4) or 22(b), and both predated the SEC's approval of comprehensive regulations governing the amount of 12b-1 fees and other mutual fund sales charges. Meyer, 895 F.2d at 866 (absent fee regulation,

rule . . . thereunder." 15 U.S.C. § 80a-35(b)(4). Because 12b-1 fees plainly are subject to § 17(d) and the Rules thereunder, see Motion at 27 & nn.30-31, plaintiff's claim must be dismissed. See Lessler v. Little, 857 F.2d 866, 874 (1st Cir. 1988) (applying § 36(b)(4) to exclude payments subject to § 17 from § 36(b)).

## CONCLUSION

Plaintiff has twice failed to plead a sustainable claim. Notwithstanding plaintiff's footnote allusion to the possibility of yet another amendment, Opp. 36 n.18, the Complaint should be dismissed without leave to amend. Suckow Borax Mines Consol., Inc. v. Borax Consol., Ltd., 185 F.2d 196, 209 (9th Cir. 1950).

RESPECTFULLY SUBMITTED this 30th day of October, 2009.

K&L GATES LLP

By: /s/ Stephen G. Topetzes
Stephen G. Topetzes
Nicole A. Baker
1601 K Street, N.W.
Washington, D.C. 20006

- and -

Shannon L. Giles
Law Offices of Shannon Giles, PLLC
2205 East Speedway Boulevard
Tucson, AZ 85719

*Counsel for Defendants Davis Selected Advisers, L.P. and Davis Distributors, LLC*

"advisers might be able to extract additional compensation" through 12b-1 fees).

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2009, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing for the following CM/ECF registrants: Francis J. Balint, Jr., fbalint@bffb.com; Daniel W. Krasner, Krasner@whafh.com; and Robert B. Weintraub, Weintraub@whafh.com.

/s/ Stephen G. Topetzes
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
202-778-9000
202-778-9100 (fax)