K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
TELEPHONE 202-778-9000

Stephen G. Topetzes (Admitted *pro hac vice*)
stephen.topetzes@klgates.com
Nicole A. Baker (Admitted *pro hac vice*)
nicole.baker@klgates.com

LAW OFFICE OF SHANNON GILES, PLLC
2205 East Speedway Boulevard
Tucson, AZ  85719
TELEPHONE 520-327-1343

Shannon L. Giles (#018786)
Shannon.Giles@me.com

*Counsel for Defendant Davis Selected Advisers,
L.P. and Davis Distributors, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| DONALD TURNER, on behalf of the DAVIS NEW YORK VENTURE FUND,<br><br>Plaintiff,<br><br>-against-<br><br>DAVIS SELECTED ADVISORS L.P. and DAVIS DISTRIBUTORS, LLC,<br><br>Defendants. | NO. CV-08-421-TUC-JMR<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF ON THE ISSUE OF WHETHER PLAINTIFF HAS STANDING TO BRING HIS CLAIM**<br><br>ORAL ARGUMENT REQUESTED |

Pursuant to the Court's order entered January 28, 2010 (dckt. no. 62), Davis Selected Advisers, L.P. ("Davis"), the investment adviser to the Davis New York Venture Fund (the "Fund"), and Davis Distributors, LLC respectfully submit this supplemental brief regarding

plaintiff Donald Turner's standing to bring certain of the claims alleged in his Amended Complaint ("Complaint" or "Compl.").

**PRELIMINARY STATEMENT**

The Fund has multiple classes of shares. Compl. ¶¶ 41, 77-80. All classes pay the same advisory fee. Compl. ¶ 41. But each has its own separate and distinct plan of distribution, and the sales charges and related fees therefore vary among the share classes. Compl. ¶¶ 41, 77-80.

Plaintiff alleges that he owns only Class A shares of the Fund. See, e.g., Compl. ¶¶ 25, 29. Yet he purports to assert a Section 36(b) claim alleging that distribution fees not assessed on Class A shares are legally excessive and should be returned to the Fund. Plaintiff lacks Article III standing to bring such a claim. The Complaint does not allege that plaintiff personally suffered any injury from these allegedly excessive fees. And plaintiff would not share in any recovery that might result from a judgment on this claim.

Indeed, plaintiff personally might be financially worse off if he succeeded on his claim that the 12b-1 distribution fees charged to one or more share classes he does not own were excessive. While the Court should not resolve this factual issue at this point in the litigation, the potential conflict between plaintiff and the non-Class A shareholders he purports to represent raises due process concerns and provides another basis to deny audience to the merits of the 12b-1 distribution fee claim.

Defendants concede that plaintiff appears to have Article III standing to challenge the advisory fee and the .25% service fee assessed on the Class A shares plaintiff owns. However, they respectfully reserve the right to contest plaintiff's adequacy as a representative of the other share classes at a later point in the litigation.

# ARGUMENT

## I. PLAINTIFF LACKS ARTICLE III STANDING TO CHALLENGE AS EXCESSIVE RULE 12b-1 FEES ASSESSED ONLY AGAINST CLASSES OF SHARES THAT PLAINTIFF DOES NOT OWN

Plaintiff's claim that defendants received (and the Fund was charged) excessive Rule 12b-1 distribution fees must be dismissed on Article III standing grounds except to the limited extent that the Complaint attempts to state a claim based on the .25% service fee. See Compl. ¶¶ 77 (describing service fee). As a Class A shareholder, plaintiff has no financial stake in litigation concerning the remaining component of the 12b-1 fees, which is assessed only against other classes of Fund shares. The Court therefore is not presented with the concrete case or controversy that is a prerequisite to a ruling on the other type of 12b-1 fee.

### A.  Article III Requirements

Section 36(b) authorizes a suit "by a security holder of such registered investment company on behalf of such company." 15 U.S.C. § 80a-35(b). However, Section 36(b) was enacted prior to the advent of multi-class investment companies with separate plans of distribution.[1] And, as the Supreme Court made clear in the context of the right of action afforded by Section 16(b) of the Securities Exchange Act of 1934, the statute cannot be construed or applied in a manner that is inconsistent with the fundamental requirements of Article III:

> Although Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself. Moreover, the plaintiff must maintain a personal stake in the outcome of the litigation throughout its course.

Gollust v. Mendell, 501 U.S. 115, 125-26 (1991) (citations and internal quotation and other marks omitted). See also Summers v. Earth Island Inst., 129 S. Ct. 1142, 1151 (2009) ("the requirement

---

[1] Section 36(b) was added to the Investment Company Act ("ICA") in 1970, and Rule 12b-1 was promulgated in 1980. The multi-class structure was first introduced to the United States in the 1980s, and in 1995, the Securities & Exchange Commission adopted Rule 18f-3, a uniform exemptive rule under the ICA that permits registered open-end management investment companies to issue more than one class of voting shares. See Release No. IC-20915, 60 Fed. Reg. 11,876 (Mar. 3, 1995).

of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute"); W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (statutory standing is "separate and apart from the elements of constitutional standing" and cannot be "used to avoid constitutional requirements").

Article III standing is a threshold issue in every case; federal courts lack subject matter jurisdiction to proceed with a claim that the named plaintiffs lack Article III standing to bring. See, e.g., Warth v. Seldin, 422 U.S. 490, 498 (1975); City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976); O'Shea v. Littleton, 414 U.S. 488, 493-94 (1974).[2]

A plaintiff bears the burden of establishing standing. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 (2006). Recent Supreme Court cases have increased plaintiff's burden beyond what was previously required in this Circuit and elsewhere. See Ashley Creek Prop., LLC v. Timchak, 649 F. Supp. 2d 1171, 1177 (D. Idaho 2009). To satisfy the threshold standing requirement, the plaintiff must allege: (1) personal injury suffered by him that is (2) fairly traceable to a defendant's allegedly unlawful conduct, and (3) that is likely to be redressed by the relief requested. See Allen v. Wright, 468 U.S. 737, 751 (1984).

**B.  Plaintiff Lacks Article III Standing to Allege Excessive 12b-1 Distribution Fees**

In this case, plaintiff lacks the requisite direct or indirect financial interest in the outcome of litigation relating to 12b-1 fees other than the 0.25% service fee.

Plaintiff correctly alleges that the Fund has multiple classes of shares. Compl. ¶¶ 41, 77-80. While all share classes pay the same advisory fee, Compl. ¶ 41, the sales charges and related

---

[2]  In challenging subject matter jurisdiction, a defendant's ability to raise factual matters is broader than it is in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See, e.g., McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290-91 (3d Cir. 2006); Ashley Creek Properties, LLC v. Timchak, 649 F. Supp. 2d 1171, 1175-76 (D. Idaho 2009). In this case, however, plaintiff's lack of Article III standing is clear from the pleadings and matters of which the Court may take judicial notice.

distribution fees vary among the share classes, each of which has its own separate and distinct plan of distribution. Compl. ¶¶ 41, 77-80. For example, Class A shareholders pay a maximum front-end sales load of 4.75%[3] (significantly, front-end sales loads are expressly exempted from the scope of Section 36(b), see 15 U.S.C. § 80a-35(b)(4)); and a recurring 12b-1 service fee of .25% is thereafter assessed on Class A shares. Compl. ¶¶ 41, 77 (expressly alleging that "Class A shares are charged *only* this 0.25% 12b-1 fee") (emphasis added). By contrast, Class B shareholders pay no front-end sales load, but (in addition to the 0.25% service fee) a Rule 12b-1 distribution fee of up to 0.75% is assessed against Class B shares of the Fund. See, e.g., Compl. ¶¶ 41, 79. As detailed in defendants' motion to dismiss the Complaint, the distribution and service fees serve different purposes. The distribution fee is essentially a substitute for a front-end sales load, while the service fee generally is used to compensate brokers for providing ongoing services to existing shareholders.

Notwithstanding the Complaint's allegations regarding fees paid by other share classes, plaintiff alleges that he owns only Class A shares of the Fund. See, e.g., Compl. ¶¶ 25, 29. As already noted, no 12b-1 distribution fee is assessed against these shares. Thus, plaintiff (and all other class A shareholders) suffered no injury as a result of any impropriety associated with these fees, and plaintiff appears to have no financial stake in litigation concerning this fee. To illustrate the point, assuming *arguendo* that the .75% 12b-1 distribution fee paid by Class B shareholders was found to violate Section 36(b), the result would be a return of the amount deemed to be excessive, which would accrue only to the benefit of Class B shareholders. See generally 17 C.F.R. § 270.18f-3(a) (2009) (mandating that, for multiple class companies, "[e]ach class … [s]hall have a different arrangement for shareholder services or the distribution of securities or

---

[3] The amount of this front-end sales charge can be reduced depending on the dollar amount invested by the customer in Class A shares; that is, larger purchasers that exceed certain "breakpoints" entitle investors to lower front-end sales charge. See Excerpts from Davis New York Venture Fund Registration Statement, incorporating the Davis New York Venture Fund Prospectus, dated December 1, 2008, submitted as Ex. H to Defendants' Motion to Dismiss the Amended Complaint, dckt. no. 45-3 (filed June 23, 2009).

1  both, and shall pay all of the expenses of that arrangement.").

2  <u>Gollust</u> states that, in a Section 16(b) cause of action on behalf of a corporation, a
3  shareholder's financial stake can be "indirect" and "attenuated." <u>Gollust</u>, 501 U.S. at 127.[4]
4  Plaintiff seeks to extend <u>Gollust</u> beyond the breaking point. Indeed, plaintiff has not alleged any
5  plausible way in which a return of allegedly excessive fees paid exclusively by Class B
6  shareholders will increase the value of his investment. Plaintiff's financial stake in such a claim
7  is neither "indirect" nor "attenuated:" it is non-existent. As the Supreme Court recently
8  emphasized, "speculation does not suffice. Standing … is not an ingenious academic exercise in
9  the conceivable but requires a factual showing of perceptible harm." <u>Summers</u>, 129 S. Ct. at
10 1152 (citation, internal quotation and other marks omitted).

11 Accordingly, plaintiff's claim regarding 12b-1 distribution fees not assessed on Class A
12 shares must be dismissed for lack of Article III standing. <u>Cf.</u> <u>Acosta v. Pacific Enters.</u>, 950 F.2d
13 611, 617 (9th Cir. 1991) (plaintiff lacked standing to challenge decisions affecting retirement
14 plans or participants of plans in which he did not participate); <u>In re Mut. Funds Inv. Litig.</u>, 519 F.
15 Supp. 2d 580, 588-90 (D. Md. 2007) (shareholder of multi-series fund could only sue under
16 Section 36(b) for excessive advisory fees charged to his series, and not for the fees charged to
17 other series, although both series were part of the same corporate entity) (collecting cases).

18 It is no answer that (as plaintiff suggested at page 22 of his opposition to defendants'
19 motion to dismiss) "there are activities undertaken 'jointly' that are not divided by the class of
20 shares" and that "certain aspects of the alleged unlawful conduct [a]ffect all Fund shareholders
21 jointly." The fact that **some** Fund activities are not divided by share class or that **certain aspects**
22 of plaintiff's allegations (such as the allegedly excessive advisory fee) affect all shareholders is
23 immaterial. Plaintiff ignores the reality of his claims: a substantial, identifiable and segregable

---

[4] For example, holding a single share of corporate stock suffices, and even a bondholder may have the requisite interest given that "any recovery by the issuer will increase the value of the bond … because the issuer may become a slightly better credit risk." <u>Id.</u>

portion of his asserted claims concern the .75% distribution fees paid by persons other than plaintiff and other Class A shareholders. Plaintiff Turner has no personal stake in litigation regarding whether the 12b-1 distribution fees assessed on share classes Turner does not own violate Section 36(b). See generally Blum v. Yaretsky, 457 U.S. 991, 999 (1982) ("[n]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to that which he has not been subject").[5]

### C. Defendants' Analysis is Largely Consistent with the Recent Corbi Decision

At first blush, the analysis herein may appear to be inconsistent with the recent Statement of Intended Decision in In re American Funds Fee Litigation (a/k/a Corbi v. The Capital Group Co.), Master File No. CV-04-05593 GAF (RNBx), Statement of Intended Decision (C.D. Cal. Sept. 16, 2009), dckt. no. 556. Upon closer examination, however, the apparent difference may be more semantic than substantive.

The Corbi court concluded in relevant part that:

> [I]nsofar as any excessive fees were disproportionate to the services rendered and impaired the funds' performance, the investors in the funds suffered these injuries equally, regardless of share class. In short, the main difference among the different share classes is the manner in which sales charges are assessed against investors – a difference that is not sufficient to preclude Plaintiffs from proceeding on behalf of all shareholders of the funds at issue.

Id. at 11.[6]

If Section 36(b) afforded a general remedy for fund underperformance, defendants might

---

[5] See also Summers, 129 S. Ct. at 1149 (a plaintiff "bears the burden of showing that he has standing for each type of relief sought"); Prado-Steiman v. Bush, 221 F.3d 1266, 1280 (11th Cir. 2000) ("It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert … each claim must be analyzed separately.") (citations and internal quotation marks omitted).

[6] The Corbi court subsequently issued findings of fact and conclusions of law. 2009 WL 5215755 (Dec. 28, 2009). The findings pertinent to standing are substantially the same as those reflected in the Statement of Intended Decision. See id. at *42.

agree that a plaintiff who invested in a share class that did not pay Rule 12b-1 fees nonetheless has standing to bring that type of claim. But, as numerous other authorities have held, and as the Corbi court itself concluded only three pages later, Section 36(b) clearly affords no such remedy.[7] It makes no difference to defendants whether the Court couches this conclusion as one that such a theory fails to state a claim or that it is too insubstantial or implausible to confer subject matter jurisdiction on the Court. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998).

As already noted, a plaintiff must demonstrate standing separately for each form of relief sought. Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). Defendants respectfully submit that the key point here is that plaintiff has no standing to assert a Section 36(b) claim alleging that the 12b-1 distribution fees are legally excessive and must be restored to the Fund. Plaintiff lacks such standing because he never owned shares that paid the fee and would not share in the recovery were the fee somehow deemed to violate the statute. Cf. Traylor v. Avnet, Inc., 257 F.R.D. 521, 526 (D. Ariz. 2009) ("Although both the named plaintiffs and the

---

[7] The Corbi court rejected allegations that the adviser violated Section 36(b) "by charging billions of dollars in Rule 12b-1 fees that were designed to promote growth and increase assets under management at a time when the American Funds were already experiencing unprecedented growth that was creating significant problems with fund management and causing fund performance to deteriorate." Corbi, Master File No. CV-04-05593 GAF (RNBx), Statement of Intended Decision (C.D. Cal. Sept. 16, 2009), dckt. no. 556, at 13. This was "not … a viable theory of liability under section 36(b) with respect to Rule 12b-1 fees" even though plaintiff asserted that the use of the fees "did not benefit the Funds." Id. at 14. Section 36(b) "addresses only the negotiation and enforcement of payment arrangements between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds." Id. (citation and internal quotation marks omitted). This aspect of the Corbi court's analysis is consistent with the decision of numerous courts. See, e.g., Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (rejecting Section 36(b) claim based on 12b-1 fees because "one must allege excessive fees, rather than fees that might simply be described as 'improper'" and "the complaint must specifically allege that the fees were so disproportionately large that they bore no relationship to the services rendered" id. at 118); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 329 (4th Cir. 2001) ("if this claim for general breach of fiduciary duty is to be brought, it must be done under some other section of the ICA [besides Section 36(b)], or alternatively under state law"); Green v. Nuveen Advisory Corp., 295 F.3d 738, 744 n.9 (7th Cir. 2002) ("fund mismanagement issues" are not "within the purview" of Section 36(b)); Yameen v. Eaton Vance Distribs., Inc., 394 F. Supp. 2d 350, 358 (D. Mass. 2005); Alexander v. Allianz Dresdner Asset Mgmt. of America Holding, Inc., 509 F. Supp. 2d 190, 195-96 (D. Conn. 2007); ING Principal Prot. Funds Derivative Litig., 369 F. Supp. 2d 163, 168-69 (D. Mass. 2005); Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 344-45 (2d Cir. 2006).

annuitants are alleged to have been injured by the same unlawful conduct – [defendant's] failure to properly calculate the lump sum payment – their injuries and respective remedies are significantly different." The named plaintiffs therefore lacked standing.). To the extent that Corbi is inconsistent with this conclusion, defendants submit that it is unpersuasive.

## II. PLAINTIFF SUFFERS FROM A MATERIAL CONFLICT THAT PRECLUDES HIM FROM PURSUING THE CLAIM FOR EXCESSIVE 12b-1 DISTRIBUTION FEES

A conclusion that plaintiff might derive a secondary benefit (such as improved investment performance) from a successful Section 36(b) claim concerning the .75% distribution fee would not change the standing analysis.[8]

Significantly, however, the eventual implications of a judicial finding that the .75% 12b-1 distribution fee is excessive might actually leave plaintiff worse off. The Complaint alleges that 12b-1 distribution fees have increased fund size and thus (as a result of the advisory fee breakpoints) resulted in a decrease in the advisory fee rate. Compl. ¶¶ 16, 228, 249, 257. While the Complaint avers that the reduction in the advisory fee produced by the breakpoints is far less than the amount of the 12b-1 fee, this is of no consequence to plaintiff. The Class A shares that plaintiff owns pay advisory fees but not 12b-1 distribution fees. As a result, any advisory fee reduction produced by 12b-1 distribution fees benefits plaintiff regardless of the cost.

Apart from underscoring plaintiff's lack of a cognizable interest in the relief he seeks, this is a stark potential conflict. And while the issue is unsettled, it seems clear that some minimum standards of adequate representation must inhere in Section 36(b). Cf. Coan v. Kaufman, 457 F.3d 250, 259 (2d Cir. 2006) ("the representative nature of the [ERISA] section 502(a)(2) right of action implies that plan participants must employ procedures to protect effectively the interests

---

[8] See, e.g., Vermont Agency of Natural Res. v. United States, 529 U.S. 765, 772-73 (2000) ("An interest unrelated to injury in fact is insufficient to give a plaintiff standing," id. at 772, and "an interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes," id. at 773. Also, "[t]he interest [asserted for standing purposes] must consist of obtaining compensation for, or preventing, the violation of a legally protected right." Id. at 772.); Summers, 129 S. Ct. at 1151-53 (rejecting argument that a "realistic threat" or statistical likelihood of harm suffices to confer standing).

1  they purport to represent"); Rodriguez v. West Publ'g Corp., 563 F.3d 948, 959 (9th Cir. 2009)
2  ("An absence of material conflicts of interest between the named plaintiffs and their counsel with
3  other class members is central to adequacy and, in turn, to due process for absent members of the
4  class.").

5        The serious potential misalignment between plaintiff's incentives and those of the non-
6  Class A shareholders he seeks to represent provides another threshold reason to terminate
7  plaintiff's effort to assert a claim for excessive 12b-1 distribution fees.  See Sinochem Int'l Co.
8  Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) ("a federal court has leeway to
9  choose among threshold grounds for denying audience to a case on the merits.") (citation and
10 internal quotation marks omitted).

11 **III. DEFENDANTS RESERVE THE RIGHT TO CHALLENGE PLAINTIFF'S RIGHT TO REPRESENT OTHER SHARE CLASSES AS TO THE OTHER FEES CHALLENGED IN THE COMPLAINT**
12

13       Defendants do not challenge the Court's subject matter jurisdiction to adjudicate the
14 merits of plaintiff's Section 36(b) claims alleging that excessive advisory fees and an excessive
15 .25% service fee were assessed against Class A shares that plaintiff allegedly owns.  Nonetheless,
16 as set forth in their Motion to Dismiss, defendants respectfully submit that plaintiff has failed to
17 state a claim with respect to those remaining matters.  Particularly because they believe the issues
18 presented therein are straightforward, defendants respectfully request that the Court rule on their
19 motion to dismiss plaintiff's claims regarding the advisory fee and the .25% service fee.  Cf.
20 Wright v. Schock, 742 F.2d 541, 545-46 (9th Cir. 1984) (although Fed. R. Civ. P. 23 favors early
21 determination of class issues, court may first determine matters going to the merits "where
22 considerations of fairness and economy dictate … and where the defendant consents to the
23 procedure").

24       In any event, defendants respectfully reserve the right to argue at a later stage of the
25 proceedings that plaintiff lacks the ability to represent shareholders of other classes of the Fund.
26 Defendants note that such a challenge would be similar to an opposition to class certification Cf.

Coan v. Kaufman, 457 F.3d 250, 256-62 (2d Cir. 2006) (addressing such a challenge in the generally similar context of a representative action authorized by ERISA). It would not appear to bear on plaintiff's Article III standing. Compare Easter v. American West Fin., 381 F.3d 948, 962 (9th Cir. 2004) (Article III standing and class certification are separate and independent requirements). However, to the extent this issue may become relevant at a later stage of this proceeding, defendants note their reservation of rights in this supplemental brief.

## CONCLUSION

Plaintiff lacks Article III standing to assert a Section 36(b) claim seeking an award to the Fund of the allegedly excessive .75% 12b-1 distribution fee assessed on share classes he never owned. He is also an inadequate representative of non-Class A shareholders with respect to such a claim.

RESPECTFULLY SUBMITTED this 9th day of February, 2010.

LAW OFFICE OF SHANNON GILES, PLLC
2205 E. Speedway Blvd.
Tucson, AZ 85719

By:   /s/ Shannon L. Giles

- and -

Stephen G. Topetzes.
Nicole A. Baker
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006

*Counsel for Defendants Davis Selected Advisers, L.P and Davis Distributors, LLC*

| | |
|---|---|
| 1 | CERTIFICATE OF SERVICE |
| 2 | I hereby certify that on the 9th day of February, 2010, I electronically submitted the |
| 3 | attached document to the Clerk's Office using the CM/ECF System for filing and |
| 4 | transmittal of a Notice of Electronic Filing for the following CM/ECF registrants: Francis |
| 5 | J. Balint, Jr. fbalint@bffb.com; Daniel W. Krasner, Krasner@whafh.com; and Robert B. |
| 6 | Weintraub, Weintraub@whafh.com. |

/s/ Shannon L. Giles
LAW OFFICE OF SHANNON GILES, PLLC
2205 E. SPEEDWAY BLVD.
TUCSON, AZ 85719