Francis J. Balint, Jr. (007669)
BONNETT FAIRBOURN FRIEDMAN
 & BALINT, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602/274-1100
Facsimile: 602/274-1199
*Local Counsel for Plaintiff*

Daniel W. Krasner (*Admitted Pro Hac Vice*)
Krasner@whafh.com
Robert B. Weintraub (*Admitted Pro Hac Vice*)
Weintraub@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653
*Lead Counsel for Plaintiff on behalf of
the Davis New York Venture Fund*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Donald Turner, on behalf of the Davis New York Venture Fund,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>Davis Selected Advisers, L.P. and Davis Distributors, LLC,<br><br>　　　　　Defendants. | NO. 4:08-cv-00421-JMR<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OPPOSING DEFENDANTS' CONTENTION THAT PLAINTIFF LACKS STANDING TO BRING 12b-1 FEE CLAIM WITH RESPECT TO THE DISTRIBUTION FEE PORTION OF THE 12b-1 FEE**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

PAGE NOS.

I. INTRODUCTION ................................................................................................ - 1 -

II. ARGUMENT ....................................................................................................... - 2 -

    A. After Repeated Backpedaling in Their Briefs, Defendants' Supplemental Brief on Standing Finally Concedes that Neither the 12b-1 Fee Claim Nor the Advisory Fee Claim Can Be Dismissed Upon Standing Grounds ....... - 2 -

    B. Plaintiff Has Standing to Assert Claims With Respect to All 12b-1 Fees Paid By All Classes of the Fund, Including the Distribution Fee Paid By Class B and Class C Shareholders ........................................................................... - 5 -

        1. The Statutory Language Permits Plaintiff to Sue on Behalf of the Fund for All 12b-1 Fee Damages Including the Distribution Fee.............. - 5 -

        2. Judge Feess in *Corbi* Expressly Held that a Plaintiff May Bring Suit on Behalf of All Classes of Fund Shares for All 12b-1 Fee Damages, Including the Distribution Fee Paid By Class B and Class C Shareholders ................................................................................................ - 6 -

    C. Defendants' Remaining Standing Arguments Should Be Rejected ........... - 9 -

    D. Defendants Essentially Concede that Their "Standing" Argument Is Not Appropriate for a Motion to Dismiss ...................................................... - 10 -

III. CONCLUSION ................................................................................................. - 12 -

# TABLE OF AUTHORITIES

**CASES**  **PAGES NOS.**

*Allen v. Wright,*
  468 U.S. 737 (1984)..................................................................................................8

*In re American Funds Fee Litigation (a/k/a Corbi v. The Capital Group Co.),*
  (Findings of Fact and Conclusions of Law),
  No. CV-04-05593 GAF (RNBx),
  2009 U.S. Dist. LEXIS 120597 (C.D. Cal. Dec. 28, 2009)................................ 6, 7, 8, 9

*In re American Funds Fee Litigation (a/k/a Corbi v. The Capital Group Co.)*
  *(Corbi "SID"),*
  No. CV-04-05593 GAF (RNBx),
  2009 U.S. Dist. LEXIS 98871 (C.D. Cal. Sept. 16, 2009) .......................................8, 11

*In re American Funds Fee Litigation (a/k/a Corbi v. The Capital Group Co.),*
  No. CV-04-05593 GAF (RNBx),
  2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Dec. 16, 2005)..................................................7

*Daily Income Fund, Inc. v. Fox,*
  464 U.S. 523 (1984)..................................................................................................2

*Davis v. Yageo Corp.,*
  481 F.3d 661 (9th Cir. 2007) ....................................................................................8

*Gollust v. Mendell,*
  501 U.S. 115 (1991)..................................................................................................9

*Kamen v. Kemper Financial Services, Inc.,*
  500 U.S. 90 (1991)....................................................................................................2

*Kaufmann v. Dreyfus Fund, Inc.,*
  434 F.2d 727 (3d Cir. 1970) .....................................................................................7

*In re Mutual Funds Investment Litigation,*
  519 F. Supp. 2d 580 (D. Md. 2007).......................................................................9-10

*In re Salomon Smith Barney Mutual Fund Fees Litigation,*
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) ......................................................................7

*In re Scudder Mutual Fund Fees Litigation,*
   No. 04 Civ. 1921 (DAB), 2007 U.S. Dist. LEXIS 59643 (S.D.N.Y. Aug. 14, 2007) ...... 7


**STATUTES & RULES**

Federal Rules of Civil Procedure
   Rule 23.1 ................................................................................................................. 2

Investment Company Act of 1940,
   15 U.S.C. § 80(a)- 35(b) ("Section 36(b)") ............................................................ *passim*

United States Constitution, Article III ........................................................................ 1, 3

/ 570315

## I. INTRODUCTION

In its January 28, 2010 Order (Dkt. 62) this Court twice quotes defendants' memoranda in support of their motion to dismiss the Amended Complaint ("AC") wherein defendants assert that: (a) "Plaintiff lacks standing to bring much of the purported excessive 12b-1 fee claim because it attacks fees levied only on share classes plaintiff does not own" (Dkt. 43, Dfts' Mem. at 4) and (b) "Article III precludes [Plaintiff] from maintaining this claim irrespective of his standing to bring other aspects of the lawsuit and regardless of how the statutory language of § 36(b) might otherwise be construed." Dkt. 58, Dfts' Reply at 2. The Court then directs the parties to file "supplemental briefs specifically directed to the issue of whether Plaintiff has standing to bring his claim." Since defendants admit plaintiff has standing to pursue the whole of his claim for excessive and disproportionate advisory fees (*e.g.*, Dkt. 63 at 2), plaintiff respectfully submits this supplemental memorandum of points and authorities with respect to the issue of whether plaintiff has standing to bring in its entirety his claim for excessive and disproportionate 12b-1 fees.

The Court's request for additional briefing essentially has called defendants' bluff. Defendants in response have now been forced to expressly concede that plaintiff, who owns only Class A shares, nevertheless has standing to bring his 12b-1 fee claim for all classes of Fund shares, and that the 12b-1 fee claim can not be dismissed on standing grounds. Defendants concede that plaintiff has standing to bring his claim (on behalf of the Fund) for the 0.25% "shareholder service fee" portion of the 12b-1 fee,[1] with respect to all share classes which are assessed the shareholder service fee, which are classes A through C – plaintiff is not limited to bringing suit for the shareholder service fee charged

---

[1] There are two parts to the 12b-1 fee. A 0.25% "shareholder service fee" is assessed against each of Fund share Classes A, B, C and R. Concerning Class A, this is the only 12b-1 fee assessed. For Classes B and C, an additional 0.75% "distribution fee" is assessed, so that the total 12b-1 fee assessed against Classes B and C is 1.0% (0.75% assessed against Class R). *E.g.*, AC ¶¶ 77, 79.

to Class A shares alone. This Supplemental Standing Brief therefore is directed to the only remaining question: whether plaintiff has standing to bring his 12b-1 fee claim for the 0.75% distribution fee portion of the 12b-1 fee, which is assessed against Class B and C shares but not against Class A shares.

For the reasons set forth below, defendants' argument that plaintiff lacks standing to bring the 12b-1 fee claim with respect to its "distribution fee" component should likewise be rejected.[2]

## II.   ARGUMENT

### A.   After Repeated Backpedaling in Their Briefs, Defendants' Supplemental Brief on Standing Finally Concedes that Neither the 12b-1 Fee Claim Nor the Advisory Fee Claim Can Be Dismissed Upon Standing Grounds

Defendants change their standing argument from brief to brief. Defendants have attempted to walk a fine line, but this Court's request for additional briefing has forced defendants to finally concede that plaintiff's 12b-1 claim cannot be dismissed upon standing grounds.

As a threshold matter, in their initial memorandum in support of their motion to dismiss the AC, defendants tried to suggest that plaintiff's entire 12b-1 claim should be

---

[2] In their Supplemental Standing Brief, defendants routinely describe this action as a class action. It is not. It is a direct action bought on behalf of the Fund and not on behalf of a class of shareholders. (Such actions sometimes have been described as a quasi-derivative action.) There is no class to certify. There is no proposed class representative under Rule 23. Moreover, there is no dispute among the parties concerning the fact that plaintiff need not comply with the prerequisites of shareholder litigation set forth in Federal Rules of Civil Procedure 23.1, including but not limited to that plaintiff need not comply with the demand requirements of traditional derivative actions. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 534 n.11, 540 (1984); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991). AC ¶2. Defendants previously have referred to this action as a "derivative action." *See* Dkt. 43, Dfts' Mem. in Support of Motion to Dismiss at 20 ("in the analogous context of the derivative right of action afforded by § 16(b) of the Securities Exchange Act of 1934").

- 2 -

1  dismissed for lack of standing.  There, defendants misleadingly cast their standing
2  argument, stating that:

>  Plaintiff lacks standing to bring much of the purported excessive 12b-1 fee claim because it attacks fees levied ***only on share classes plaintiff does not own***.

Dkt. 43 at 4 (emph. added).

Defendants' insinuation – that plaintiff had brought suit only on behalf of Fund share classes in which plaintiff did *not* own shares --  was simply untrue.  The AC alleges that *Plaintiff purchased and still owns Class A shares of the Fund.*  AC ¶25.

Later, in this very same opening memorandum, defendants retreat from this position, conceding that plaintiff has standing to bring the 12b-1 fee claim, but argue that his standing was limited to only Class A shares of the Fund because he did not own the other classes of Fund shares.  Dkt. 43 at 19-20.  According to defendants, since Class A shares are assessed only one component of the overall 12b-1 fee, the 0.25% shareholder service fee, plaintiff was limited to bringing suit only with respect to the shareholder service fee assessed against Class A shares.  This meant, according to defendants, plaintiff could not bring suit on behalf of the Fund for ***any*** of the 12b-1 fees paid by Class B and C shareholders, including the same 0.25% shareholder service fee paid by the Fund for share classes other than Class A.  AC ¶¶77, 79.

In their reply memorandum, defendants backtrack from this position and suggest a further fall-back position -- admitting that the 12b-1 claim could be brought by plaintiff on behalf of *all classes of the Fund* with respect to the 0.25% shareholder service fee. Defendants instead argued only that plaintiff cannot bring the claim for the 0.75% distribution fee which is assessed against only Class B and C shares.  *E.g.*, Dkt. 58 at 2 ("plaintiff has no answer to the crux of defendants' standing argument:  plaintiff lacks any economic interest in his claim relating to the .75% distribution fee").

In their Supplemental Standing Brief, defendants start at their fallback position asserted in their reply, arguing only that "Plaintiff lacks Article III standing to assert a Section 36(b) claim seeking an award to the Fund of the allegedly excessive .75% 12b-1

- 3 -

distribution fee assessed on share classes he never owned." Dkt. 63 at 11. *Accord* Dkt. 63 at 4, 6 ("plaintiff lacks the requisite direct or indirect financial interest in the outcome of litigation relating to 12b-1 fees <u>other than the 0.25% service fee</u>"). But, as demonstrated below, even this limited assertion by defendants fails as a matter of law.

As a final fall-back position in their Supplemental Standing Brief, defendants contend that the issue of whether plaintiff can bring suit on behalf of the Fund to recover fees paid by the Fund for classes other than Class A, and the extent to which he can recover for other classes, is a question for this Court to decide upon class certification and not a question of standing on a motion to dismiss. Dkt. 63 at 9-11. But, since plaintiff's 36(b) claim is not a class action and there will be no motion for class certification, see discussion *supra*, the issue of plaintiff's standing on a dismissal motion is only whether he has held Fund shares of any class during the relevant time period. AC ¶25; *Corbi*, *infra*.

It is worth noting that because 75 percent of the Fund's assets are held by Class A shares, and because defendants concede plaintiff has standing to sue with respect to the shareholder service portion of the 12b-1 fee paid by the Fund for all share classes and on the advisory fee paid by the Fund for all share classes, even assuming *arguendo* defendants' standing attack on the distribution fee portion of the 12b-1 fee is correct (which it is not), plaintiff has undisputed standing to bring suit with respect to over 80 percent of all relevant fees paid by the Fund (all classes of Fund shares on the 0.25% shareholder service portion of the 12b-1 fee plus the advisory fee). AC ¶¶77, 79, 129.

Thus, given defendants' repeated retreats, the only disputed standing issue before this Court is whether plaintiff, owner of only Class A shares, while permitted to assert a claim to recover all fees paid by the Fund with respect to the 0.25% shareholder service fee portion of the 12b-1 fee, is barred from asserting a claim on behalf of the Fund with respect the distribution fee portion (0.75% or 0.50%, depending upon the class) of the 12b-1 fee where: (1) Class A shares are not charged a distribution fee; but where (2) the different share classes invest in one and the same portfolio of assets, receive the same

types and level of service and are managed in the same manner. For the reasons set forth below, plaintiff is not so limited, and he may bring suit on behalf of the Fund for all 12b-1 fees assessed against all share classes.

**B.   Plaintiff Has Standing to Assert Claims With Respect to All 12b-1 Fees Paid By All Classes of the Fund, Including the Distribution Fee Paid By Class B and Class C Shareholders**

**1.   The Statutory Language Permits Plaintiff to Sue on Behalf of the Fund for All 12b-1 Fee Damages Including the Distribution Fee**

Section 36(b) provides in relevant part that:

> [a]n action may be brought under this subsection by . . . a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

The statute does not limit the cause of action to the holder of a particular class of fund shares; it requires only that a plaintiff own any class of fund shares, since the claim is asserted on behalf of the fund, and is not a class action for a defined group of class members.

Here, the AC alleges that there are activities undertaken "jointly" that are not divided by Fund share class. There is only one portfolio of securities purchased by the Fund for all classes of the Fund combined and there are "[s]ervices not divided by [share] class . . . [that] include (without limitation) account maintenance activities, operational functions, suitability activities, fund supermarket websites and advertising expenses." AC ¶¶207-22. Thus, certain aspects of the alleged unlawful conduct impact all Fund shareholders jointly regardless of which share class they own (from the issue of the impact of economies of scale on the portfolio, to using 12b-1 fees to pay for activities such as advertising, and to using 12b-1 fees to pay for shareholder services such as

- 5 -

operational and suitability functions which the broker-dealers are legally obligated to provide to customers in any event and to pay for broker supermarket websites).

### 2. Judge Feess in *Corbi* Expressly Held that a Plaintiff May Bring Suit on Behalf of All Classes of Fund Shares for All 12b-1 Fee Damages, Including the Distribution Fee Paid By Class B and Class C Shareholders

As this Court is aware, the federal district court in *In re American Funds Fee Litigation (a/k/a Corbi v. The Capital Group Co.)*, No. CV-04-05593 GAF (RNBx) (C.D. Cal.) ("*Corbi*") heard a case very similar to this action, which was also brought under Investment Company Act Section 36(b). After its recently concluded non-jury trial, District Judge Feess presiding, the *Corbi* Court issued its Findings of Fact and Conclusions of Law on December 28, 2009. *Corbi*, 2009 U.S. Dist. LEXIS 120597 (C.D. Cal. Dec. 28, 2009).[3]

In analyzing *Corbi*, defendants initially concede that "[a]t first blush, [our] analysis herein may appear to be inconsistent with the recent" decision in *Corbi*, but then assert that "the apparent difference may be more semantic than substantive" and that the *Corbi* Court's analysis "is largely consistent" with their analysis. Dkt. 63, at 7. Defendants' are mistaken. Judge Feess squarely ruled for plaintiff on the standing issue.

The recent *Corbi* decision expressly addressed ***and rejected*** the same standing argument which defendants have raised on this motion to dismiss. In a cogent analysis, *Corbi* held that the plaintiffs there had standing to bring suit on behalf of the fund for all fund share classes, regardless of which class of fund shares they owned, for all alleged 12b-1 fee damages. Judge Feess held:

---

[3] As a threshold matter, the very fact, without more, that the *Corbi* decision came after a trial, not on a motion to dismiss or for summary judgment, undermines defendants' motion to dismiss here. Moreover, as detailed in plaintiffs' two prior briefs opposing the motion to dismiss the AC, Dkts. 52, 59, the AC alleges facts which go beyond the allegations contained in *Corbi*, where the motion to dismiss was denied and no summary judgment motion was even attempted. *E.g.,* Dkt. 60, Pltf's Suppl. Br. re *Corbi* at 5-7.

- 6 -

Taken together, the various named Plaintiffs in this action own Class A shares of ICA, CIB, AMBAL, BFA, GFA, WGI, and AMCAP, and Class C shares of CIB and IFA. No Plaintiff owns Class B, F, R or 529 shares in any of the Funds, and no Plaintiff owns Class C shares in AMCAP, AMBAL, BFA, ICA, GFA or WGI.

As noted above, administrative services fees are paid only with respect to C, F, R and 529 share classes; they are not paid on Class A and B shares.

In addition, each share class pays different Rule 12b-1 fee levels depending, in part, upon the expenses associated with each class. Tr. 481:3-11. For example, the Rule 12b-1 fees paid on Class A and B shares are different in amount. No Plaintiffs paid Rule 12b-1 fees on Class B shares because none of them own such shares.

**These facts notwithstanding, Plaintiffs have standing to pursue a Section 36(b) claim with respect to Rule 12b-1 and administrative services fees charged to each class of shares for each of the Funds at issue in this litigation. Plaintiffs are not limited to bringing claims and seeking remedies with respect to only those share classes that they own.**

**Section 36(b) creates a private right of action for "security holder[s]" of registered investment companies; it does not distinguish among owners of different classes of shares in a mutual fund, and does not impose any requirement at the share class level.** See 15 U.S.C. § 80a-35(b).

To have statutory standing under Section 36(b), a plaintiff must own shares in the investment company which paid the fees being challenged as excessive. *E.g., In re Am. Mut. Funds Fees Litig.*, No. CV 04-5593 GAF, 2005 U.S. Dist. LEXIS 41884, at *9-10 (C.D. Cal. Dec. 16, 2005); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734-36 (3d Cir. 1970); *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921 (DAB), 2007 U.S. Dist. LEXIS 59643, at *3 (S.D.N.Y. Aug. 14, 2007); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 582 (S.D.N.Y. 2006) ("Plaintiffs have no standing as to funds which they do not own . . . .").

At least one of the eight named-Plaintiffs owns shares in each of the Funds which paid the fees at issue. Thus, the statutory standing requirement of Section 36(b) is satisfied.

> The constitutional standing requirement of "injury in fact" is also satisfied. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751 (1984); *Davis v. Yageo Corp.*, 481 F.3d 661, 675 (9th Cir. 2007) ("in order to have standing [a party] must show injury in fact").
>
> The different share classes in a particular Fund invest in the same portfolio of assets, receive the same types and level of service, and are managed in the same manner. The fact that different share classes are assessed different fees and/or fee levels is not sufficient to preclude Plaintiffs from proceeding on behalf of all shareholders of the funds at issue.  Citations to trial transcript and exhibits omitted.  Emphasis added.

*Corbi*, 2009 U.S. Dist. LEXIS 120597 at *111-14 (Conclusions of Law Nos. 5-13).[4]

As discussed above, as in *Corbi*, here the AC alleges that there are activities undertaken "jointly" that are not divided by Fund share class.  There is only one portfolio of securities purchased by the Fund for all classes of the Fund combined, the different classes within the Fund are similarly managed given there is only one portfolio of securities, and there are shareholder "[s]ervices not divided by [share] class . . . [that] include (without limitation) account maintenance activities, operational functions, suitability activities, fund supermarket websites and advertising expenses."  AC¶¶207-26. Thus, certain aspects of the alleged unlawful conduct impact all Fund shareholders jointly regardless of which share class they own.  As the *Corbi* Court held, "[t]he fact that different share classes are assessed different fees and/or fee levels is not sufficient to

---

[4] In its earlier Statement of Intended Decision ("SID"), the *Corbi* Court essentially tracked its later discussion in its Conclusions of Law.  But, the SID also added that "Defendants do not cite a single case that supports their theory that a section 36(b) plaintiff lacks standing to proceed on behalf of shareholders who own different share classes; rather, Defendants cite cases which held only that a plaintiff lacks standing under section 36(b) if she does not own shares in the mutual fund at issue.  Moreover, Defendants' contention that Plaintiffs have not suffered an injury-in-fact with respect to the shares that they do not own is unpersuasive because the different share classes in a particular American Fund invest in the same portfolio of assets, receive the same types and level of service, and are managed in the same manner. Thus, insofar as any excessive fees were disproportionate to the services rendered and impaired the funds' performance, the investors in the funds suffered these injuries equally, regardless of share class." *Corbi* SID, 2009 U.S. Dist. LEXIS 98871 at *25-26 (C.D. Cal. Sept. 16, 2009).

- 8 -

preclude Plaintiffs from proceeding on behalf of all shareholders of the funds at issue."

Defendants' disjointed approach to analyzing the *Corbi* decision is nothing more than a transparent attempt to hide the fact that Judge Feess ruled wholly in favor of plaintiff on the standing issue, and that discovery was conducted and a trial held.[5]

### C.  Defendants' Remaining Standing Arguments Should Be Rejected

Virtually all the decisional law cited by defendants concerns generalized propositions which are not in dispute on this motion. To the extent the decisions are applicable, the case law exclusively supports plaintiff's analysis.

For example, defendants concede (Mem. at 6) that a shareholder has a sufficient "financial stake" to represent other shareholders even if his financial stake is "indirect" or "attenuated." *Gollust v. Mendell*, 501 U.S. 115, 125-26 (1991) (plaintiff retained standing). Plaintiff's financial stake here is not indirect, even with respect to the 0.75% distribution fee. This is so because, for example, as detailed above, there are activities undertaken "jointly" that are not divided by the class of shares. There is only one portfolio of securities purchased by the Fund for all classes of the Fund combined, the different classes within the Fund are similarly managed given there is only one portfolio of securities, and there are "[s]ervices not divided by [share] class." AC ¶¶207-26.

Furthermore, defendants misrepresent the facts and conclusions of the only §36(b) standing decision they cite on the standing issue, *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580 (D. Md. 2007). Defendants claim that *Mutual Funds* held that a "shareholder of multi-series fund could only sue under Section 36(b) for excessive advisory fees charged to his series, and not for the fees charged to other series, although

---

[5] Contrary to this Court's Order in Docket 62, defendants seek to use their standing brief to reargue the merits of the 12b-1 claim, including their assertion that Rule 12b-1 fees are "outside the ambit of §36(b)." *See* Dkt. 63 at 8 & n.7. Plaintiff respectfully refers this Court to his prior briefs for his opposition to these arguments, adding only that plaintiff's claim here is not a generalized breach of fiduciary duty claim and that every court which has addressed the issue has held that Rule 12b-1 fees are within the ambit of Section 36(b).

both were part of the same corporate entity." Dkt. 63, Dfts' Br. at 6. The facts and law in *Mutual Funds* were otherwise.

The Court's holding in *Mutual Funds* was that under SEC rules *each series, which was a separate fund, is to be treated as a separate investment company even though each series was not separately registered*. The court held merely that a plaintiff "may not assert claims under Section 36(b) on behalf of mutual funds in which they never held shares." 519 F. Supp. 2d at 590. Since each series, which was a fund (not a class of a fund), was deemed under law to be separately registered (as would usually be the case with a mutual fund), the shareholder in one series (a fund) could not bring suit on behalf of another series (a fund) which he did not own. 519 F. Supp. 2d at 588. Here, as in *Corbi* and unlike in *Mutual Funds*, the Fund is one investment company and each class of shares is part of the same mutual fund, and not a separate series (in fact, a separate fund) where by law each series is deemed to be a separately registered mutual fund.

### D. Defendants Essentially Concede that Their "Standing" Argument Is Not Appropriate for a Motion to Dismiss

Defendants' final two arguments are that plaintiff "suffers from a material conflict that precludes him from pursuing the" distribution fee portion of the 12b-1 claim and that defendants reserve the right to challenge on class certification plaintiff's right to represent the other share classes on the distribution fee. Dkt. 63, Dfts' Br. at 9-10. These are essentially the same arguments, going to adequacy of representation in the context of class certification. As discussed above, however, this action is not a class action. Thus, there is no class certification motion. Nevertheless, defendants' position, in this somewhat analogous class action context, essentially is an admission that their "standing" argument is not appropriate for a dismissal motion.

While defendants "material conflict" argument is far from a model of clarity, defendants seem to argue that because 12b-1 distribution fees increase the size of the Fund and, as a result of breakpoints, decrease the advisory fee, plaintiff has a "material conflict" because "any advisory fee reduction produced by 12b-1 distribution fees

- 10 -

1 benefits plaintiff regardless of the cost." Dfts' Standing Br. at 9. Even assuming
2 *arguendo* its applicability at this time to the standing issue, this argument is incorrect.

3       First, any "decrease" in the advisory fee is the marginal percentage decrease in the
4 advisory fee percentage rate, and not a decrease in the overall dollar advisory fee. This
5 marginal percentage decrease impacts the shareholders of all Fund classes because the
6 advisory fee for all Fund classes is a percentage of Fund assets. Second, any miniscule,
7 marginal breakpoint decrease in the advisory fee percentage rate still results in a
8 substantial increase in overall fees assessed against the Fund for all classes because this
9 small advisory fee decrease is far outweighed by the substantial increase (in at least the
10 tens of millions of dollars) in 12b-1 fees paid as the size of the Fund increases. Third,
11 defendants' argument attempts to offset a "decrease" in the advisory fee against an
12 increase in the 12b-1 fee to determine legality. But, even if there was a "decrease" in the
13 advisory fee, utilizing such an offset analysis is incorrect as a matter of law. Whether
14 either the advisory fee or the total 12b-1 fee is excessive under the law is to be
15 determined independently of whether the other fee is excessive under law. *Corbi* SID,
16 2009 U.S. Dist. LEXIS 98871 at *27 n.5.

17       Defendants argue that "while the issue is unsettled, it seems clear that some
18 minimum standards of adequate representation must inhere in Section 36(b)" – citing
19 class action decisions. This is not a class action -- all recovery goes directly to the Fund.
20 Defendants' statement that "the issue is unsettled" misses the point: the issue is not
21 unsettled; all courts that have considered the issue have rejected defendants' (apparent)
22 argument, that class action standing analysis is applicable to a section 36(b) claim. *See*,
23 *e.g.*, *Corbi*, *supra*.[6]

24

---

25 [6] *See* Dkt. 52, Pltf's Response to Motion to Dismiss the AC at 23 n.12 (*citing* one dozen
26 class certification cases). These cases (all of which granted class certification) involved different prospectuses, and are at least one step removed from this action where plaintiff
27 purchased a different class of one Fund through the one prospectus which offered Class A, B and C shares.
28

- 11 -

### III. CONCLUSION

For the reasons set forth above and in our earlier submissions, defendants' motion to dismiss the AC should be denied in its entirety.

DATED: February 23, 2010

Respectfully submitted,

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By: /s/ Robert B. Weintraub
Daniel W. Krasner
Robert B. Weintraub
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
*Lead Counsel for Plaintiff on behalf of
the Davis New York Venture Fund*

Francis J. Balint, Jr.
BONNETT, FAIRBOURN, FRIEDMAN & BALINT
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
Local Counsel for Plaintiff

569628v7