K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
Telephone 202-778-9000

Stephen G. Topetzes (Admitted *pro hac vice*)
stephen.topetzes@klgates.com
Nicole A. Baker (Admitted *pro hac vice*)
nicole.baker@klgates.com

LAW OFFICE OF SHANNON GILES, PLLC
2205 East Speedway Boulevard
Tucson, AZ  85719
Telephone 520-327-1343

Shannon L. Giles (#018786)
Shannon.Giles@me.com

*Counsel for Defendants Davis Selected Advisers,*
*L.P. and Davis Distributors, LLC*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DONALD TURNER, on behalf of the DAVIS NEW YORK VENTURE FUND, | NO. CV-08-421-TUC-JMR |
| Plaintiff, | **DEFENDANTS' SUPPLEMENTAL REPLY BRIEF ON THE ISSUE OF WHETHER PLAINTIFF HAS STANDING TO BRING HIS CLAIM** |
| -against- | |
| DAVIS SELECTED ADVISERS, L.P. and DAVIS DISTRIBUTORS, LLC, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

Defendants hereby reply to plaintiff's February 23, 2010 supplemental memorandum addressing standing, dckt. no. 64 (the "Standing Opposition" or "Standing Opp."). Defendants' prior supplemental brief addressing standing, dckt. no. 63, filed February 9, 2010, will be referred to as the "Davis Standing Brief." This reply uses the

same abbreviations, defined terms, and structure as the Davis Standing Brief.

**PRELIMINARY STATEMENT**

Much of plaintiff's Standing Opposition consists of a puzzling, erroneous, and ultimately irrelevant argument that defendants have somehow "backtracked" or "retreat[ed]" from prior positions on standing.  Standing Opposition at 1-5.

Plaintiff's diversionary tactic cannot conceal his failure to contest the key components of defendants' standing argument.  Article III standing is assessed claim by claim.   And plaintiff suffered absolutely no personal injury from the supposed excessiveness of the 12b-1 distribution fees, and has absolutely no personal stake in any remedy that might redress such alleged excessiveness.

Moreover, while byproducts of litigation are insufficient to establish Article III standing, a likely byproduct of a judicial finding of excessive 12b-1 distribution fees is that plaintiff would be economically worse off.   This underscores plaintiff's lack of Article III standing and is a clear potential conflict of interest that precludes plaintiff's pursuit of the 12b-1 distribution fee claim.  Defendants concur that § 36(b) is <u>not</u> subject to Fed. R. Civ. P. 23 or 23.1.  But § 36(b) cannot sensibly be applied to allow a plaintiff to proceed with a claim as to which his interests may be antagonistic to those of the investment company and/or the shareholders he effectively seeks to represent.

**ARGUMENT**

**I.    PLAINTIFF LACKS ARTICLE III STANDING TO CHALLENGE AS EXCESSIVE RULE 12b-1 FEES ASSESSED ONLY AGAINST CLASSES OF SHARES THAT PLAINTIFF DOES NOT OWN**

**A.    Article III Requirements**

Plaintiff seems to agree with defendants' recitation of the pertinent general legal principles.   <u>See</u> Standing Opposition at 9 ("[v]irtually all the decisional law cited by defendants concerns generalized propositions which are not in dispute on this motion").   It thus appears to be common ground that plaintiff bears the burden of establishing Article

1    III standing in a § 36(b) case as in other contexts, see Davis Standing Brief at 3-4; that

2    Article III standing must be assessed on a claim-by claim basis, id. at 7 n.5; and that

3    Article III requires, among other things, that plaintiff suffered a personal injury from the

4    alleged unlawful conduct that is likely to be redressed by the relief requested.  Id. at 4.

5            **B.    Plaintiff Lacks Article III Standing to Allege Excessive 12b-1**
              **Distribution Fees**

6

7            Plaintiff repeats the non-sequitur that he may pursue the 12b-1 distribution fee

8    claim because ***certain other*** "aspects of the alleged unlawful conduct impact all Fund

9    shareholders jointly."  Standing Opposition at 5, 8.  He otherwise proffers no basis for

10   concluding that he meets the requirements of Article III.

11           Indeed, plaintiff again confirms that he "owns only Class A shares."  Standing

12   Opp. at 1.  And he again acknowledges that the "distribution fee portion of the 12b-1 fee

13   … is assessed against Class B and C shares but not against Class A shares." Id. at 2.  It is

14   therefore beyond serious dispute that, assuming *arguendo* that the Fund's 12b-1

15   distribution fees were excessive, plaintiff never personally suffered any injury as a result

16   of such excessiveness.  Further, he would derive absolutely no benefit from any recovery

17   on a successful excessiveness claim, which would inure exclusively to Class B or Class C

18   shares.  See 17 C.F.R. § 270.18f-3(a) (2009).  He thus fails to meet his Article III burdens.

19           Plaintiff argues that In re Mut. Funds Inv. Litig., 519 F. Supp. 2d 580 (D. Md.

20   2007), demonstrates that a plaintiff may assert a § 36(b) excessive fee claim against the

21   investment adviser on behalf of his series (or mutual fund).  Standing Opposition at 9-10.

22   But while Mutual Funds involved different facts,[1] its *ratio decidendi* forecloses plaintiff's

23   claim.  What "controls over the other factors," Mutual Funds indicates, is not whether

24   _____

25   [1]     There, plaintiffs challenged the adviser's receipt of fees attributable to market
     timing, see In re Mut. Funds Inv. Litig., 384 F. Supp. 2d 845, 867-68 (D. Md. 2005), an
26   injury that presumably would have equally affected all classes of shares in a fund.

1    plaintiff is a security holder in a given corporate entity but "the total separateness of the

2    beneficial interest in the funds."  519 F. Supp. 2d at 589 (citation and internal quotation

3    marks omitted).  A similar focus on beneficial interest shows that Turner lacks standing.

4    See Glanton v. AdvancePCS, Inc., 465 F.3d 1123 (9th Cir. 2006) (taking a generally

5    similar approach to standing in the context of an ERISA representative action).

6
7
       **C.**    **Defendants' Analysis is Largely Consistent with the Recent <u>Corbi</u> Decision**

8        The Standing Opposition (at pp. 6-9) relies heavily on the <u>Corbi</u> decision, <u>In re</u>

9    <u>American Mut. Funds Fee Litig.</u>, No. CV-04-05593 GAF (RNBx), 2009 WL 5215755

10    (C.D. Cal. Dec. 28, 2009).  <u>Corbi</u> construed the 12b-1 fee claim before it as one that raised

11    no genuine issue of excessive 12b-1 fees, but that merely sought to demonstrate that the

12    defendants acted improperly in the way that they used the 12b-1 fees.  <u>See</u> Davis Standing

13    Brief at 7-8 & n.7.  <u>Corbi</u> concluded that plaintiffs who did not own the relevant share

14    class had standing to bring such a claim, but that the plaintiffs did not "present a viable

15    theory of liability under Section 36(b)" and therefore the claim was meritless.  <u>See</u> <u>Corbi</u>,

16    2009 WL 5215755, at *47.  Defendants have no objection if this Court treats plaintiff's

17    12b-1 distribution fee claim in this manner.  <u>See</u> Davis Standing Brief at 8.[2]

18        To the extent, however, that plaintiff continues to insist that his Complaint should

19    not be viewed as similarly limited, but that it also includes a claim that the 12b-1 fees

20

21

22

23

24

25

26

---

[2]    Plaintiff conflates defendants' argument that a § 36(b) claim does not encompass a challenge to the use to which fees are put (an argument that has overwhelming precedential support, Davis Standing Brief at 8 n.7) with the unsettled question whether a challenge to the excessiveness of 12b-1 fees is outside the ambit of § 36(b) in light of the express language of § 36(b)(4).  <u>See</u> Standing Opposition at 9 n.5.  Plaintiff then repeats his argument that "every court which has addressed the issue" has rejected the latter argument.  Standing Opposition at 9 n.5.  This is demonstrably incorrect.  <u>See</u> Defendants' Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint (filed Nov. 3, 2009), dckt no. 58 at 14.

1    were excessive, it seems clear that plaintiff either disagrees with the <u>Corbi</u> court's analysis

2    of the scope of the claims before it or believes that the <u>Corbi</u> decision is distinguishable.

3    Either way, <u>Corbi</u> does not help plaintiff.

4    **II.    PLAINTIFF SUFFERS FROM A MATERIAL CONFLICT THAT**
5    **PRECLUDES HIM FROM PURSUING THE CLAIM FOR EXCESSIVE**
     **12b-1 DISTRIBUTION FEES**

6            The parties apparently agree that 12b-1 distribution fees may increase the size of

7    the Fund, and hence (by virtue of breakpoints in the advisory fee) reduce the advisory fee

8    percentage.   <u>See</u> Standing Opposition at 11.   Plaintiff seems to argue, however, that,

9    because a lower advisory fee percentage benefits all shareholders, he and other Class A

10   shareholders have no conflict with Class B and Class C shareholders.   <u>See</u> Standing

11   Opposition at 11 ("[t]his marginal percentage decrease impacts the shareholders of all

12   Fund classes because the advisory fee for all Fund classes is a percentage of Fund

13   assets").   Defendants agree that a lower advisory fee percentage rate benefits each

14   shareholder in the same manner.   But while the benefits of 12b-1 distribution fees are

15   entirely free to plaintiff and other Class A shareholders who do not pay them, as plaintiff

16   himself contends in the next breath,[3] they come at a cost to the Class B and Class C

17   shareholders given that the 12b-1 distribution fees are levied against their shares.

18           Accordingly, plaintiff might be worse off if the Fund's 12b-1 distribution fees were

19   determined to be excessive, even assuming *arguendo* that such relief would benefit Class

20   B and Class C shareholders.   Thus, the fact that all shareholder classes may have a

21   common interest in lower advisory fees does not suggest that they are similarly situated

22   with respect to 12b-1 distribution fees.   As plaintiff helpfully explains, whether one type

23

24

25   _____
     [3]    <u>See</u> Standing Opposition at 11 ("this small advisory fee decrease is far outweighed
26   by the substantial increase … in 12b-1 fees paid as the size of the Fund increases").

1  of fee "is excessive under the law is to be determined independently of whether the other

2  fee is excessive under the law." Standing Opposition at 11.[4]

3        Plaintiff brushes aside his stark potential conflict of interest.  He observes that a §

4  36(b) case is "not a class action," Standing Opposition at 4, 10, 11, and is instead a non-

5  traditional derivative action to which Fed. R. Civ. P. 23 and 23.1 are inapplicable.  Id. at 2

6  n.2.  Defendants concur,[5] but that is hardly a reason to overlook plaintiff's conflict.

7        Plaintiff's conflict underscores his lack of Article III standing.  See, e.g.,  Florida

8  Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n, 274 F.3d 924, 930 (5th Cir. 2001)

9  ("Conflict of interest problems are not merely prudential, but directly relate to Article III

10 standing principles …").

11       Plaintiff's conflict also compels the conclusion that, even apart from considerations

12 of standing, he must not be permitted to act as a representative of the Fund on the 12b-1

13 distribution fee claim.  While legislatures are free to enact novel representative rights of

14 action that are not governed by Fed. R. Civ. P. 23 or 23.1, it is doubtful that they may

15 permit a plaintiff to pursue a representative action that is contrary to his own interests.

16 "Such a selection of representatives for purposes of litigation, whose substantial interests

17 are not necessarily or even probably the same as those whom they are deemed to

18 _____

19 [4]    Accord Meyer v. Oppenheimer Mgmt. Corp., 895 F.2d 861, 866 (2d Cir. 1990).
   Plaintiff's precise argument is that the excessiveness of the advisory fee and the "total
20 12b-1 fee" should be determined separately.  Standing Opposition at 11.  Although it may
   suit plaintiff's litigating position, there is no principled basis for arguing that the 12b-1
21 distribution fee and the 12b-1 service fee, which are separate and distinct fees for separate
   and distinct services, see generally Yameen v. Eaton Vance Distribs., Inc., 394 F. Supp.
22 2d 350, 354-55 & nn.3-4 (D. Mass. 2005), should not also be considered separately.

23

24 [5]    See Standing Opposition at 4; Operating Local 649 Annuity Trust Fund v. Smith
   Barney Mgmt. LLC, --- F.3d ---, 2010 WL 520896 at *10-11 (2d Cir. Feb. 16, 2010).
25 Plaintiff is simply wrong to assert that the Davis Standing Brief "routinely describe[s] this
   action as a class action."  Standing Opposition at 2 n.2.

26

1    represent, does not afford that protection to absent parties which due process requires."

2    Hansberry v. Lee, 311 U.S. 32, 45 (1940).[6]

3            Plaintiff fails to address Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006), cited at

4    pp. 9-10 of the Davis Standing Brief.   Coan concluded that minimum standards of

5    representation are implicit in the representative right of action under ERISA § 502(a)(2).

6    It specifically found that the ERISA right of action was comparable in relevant respects to

7    § 36(b), 457 F.3d at 258, including in that it was neither a class action subject to Rule 23,

8    457 F.3d at 261, nor a derivative action subject to Rule 23.1.  Id. at 257-59.  At this point

9    in this litigation, as in Coan, "it [is] neither necessary nor helpful to delineate minimum

10   procedural safeguards that [§ 36(b)] requires in all cases."  Coan, 457 F.3d at 261.  It is

11   enough to conclude that plaintiff is simply too conflicted to bring a representative action

12   regarding the 12b-1 distribution fees.

13   **III.   DEFENDANTS RESERVE THE RIGHT TO CHALLENGE PLAINTIFF'S
             RIGHT TO REPRESENT OTHER SHARE CLASSES AS TO THE OTHER
14           FEES CHALLENGED IN THE COMPLAINT**

15           Defendants adhere to their consistently held position.  All aspects of plaintiff's

16   lawsuit fail to state a claim and defendants reserve the right to raise additional challenges

17   to plaintiff's adequacy.  See Davis Standing Brief at 10-11.  But plaintiff does not even

18   have Article III standing to sue regarding the supposed excessiveness of 12b-1 distribution

19   fees assessed only on share classes plaintiff admits he does not own.[7]

20   _____

21   [6]      The adequacy-of-representation requirements in such procedural rules as Fed. R.
     Civ. 23 and 23.1 themselves reflect due process principles.  See, e.g., Phillips Petroleum
22   Co. v. Shutts, 472 U.S. 797, 821 (1985); Cramer v. General Tel. & Electronics Corp., 582
     F.2d 259, 268-69 (3d Cir. 1978).  Defendants are entitled to litigate the adequacy of a
23   plaintiff in a representative action.  See Shutts, 472 U.S. at 803-06.

24   [7]      See also Defendants' Motion to Dismiss the Complaint (filed June 23, 2009), dckt.
     no. 43 at 4; id. at 19-20 ("Plaintiff's claim that defendants received excessive 12b-1 fees
25   must be dismissed on Article III standing grounds except insofar as the Complaint
26   attempts to state a claim on the .25% service fee that is the only 12b-1 fee assessed on the

1

## **CONCLUSION**

2

     Defendants respectfully request that plaintiff's claims be dismissed for lack of

3

Article III standing or lack of adequate representation insofar as they seek to attack the

4

Fund's 12b-1 distribution fees, and that (for the reasons set forth in the defendants'

5

motion to dismiss) plaintiff's other claims should be dismissed for failure to state a claim.

6

     Alternatively, defendants respectfully submit that the Complaint should be

7

dismissed in its entirety with prejudice.

8

     Respectfully Submitted this 2nd day of March, 2010.

9

                       LAW OFFICE OF SHANNON GILES, PLLC
                       2205 East Speedway Boulevard

10

                       Tucson, AZ 85719

11

12

             By:    /s/ Shannon L. Giles     

13

                     - and -

14

                       Stephen G. Topetzes
                       Nicole A. Baker

15

                       K&L GATES LLP
                       1601 K Street, NW

16

                       Washington, D.C. 20006

17

                       *Counsel for Defendants Davis Selected*

18

                       *Advisers, L.P. and Davis Distributors, LLC*

19

20

21

22

Class A shares that plaintiff allegedly owns."); Defendants' Reply to Plaintiff's

23

Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss

the Amended Complaint (filed Nov. 3, 2009), dckt no. 58 at 2, 9; id. at 10 ("Defendants

24

argue only that plaintiff has absolutely no personal stake in litigating whether the 12b-1

25

distribution fees assessed on share classes plaintiff does not own violate § 36(b).")

(emphasis in original).

26

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2010, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing for the following CM/ECF registrants:  Francis J. Balint, Jr. fbalint@bffb.com; Daniel W. Krasner, Krasner@whafh.com; and Robert B. Weintraub, Weintraub@whafh.com.

/s/ Shannon L. Giles
LAW OFFICE OF SHANNON GILES, PLLC
2205 East Speedway Boulevard
Tucson, AZ 85719