1  Francis J. Balint, Jr.  (007669)
   BONNETT FAIRBOURN FRIEDMAN
2   & BALINT, P.C.
3  2901 North Central Avenue, Suite 1000
   Phoenix, Arizona 85012
4  Telephone:  602/274-1100
5  Facsimile:   602/274-1199
   *Local Counsel for Plaintiff*
6
7  Daniel W. Krasner  (*Admitted Pro Hac Vice*)
   Krasner@whafh.com
8  Robert B. Weintraub  (*Admitted Pro Hac Vice*)
   Weintraub@whafh.com
9  WOLF HALDENSTEIN ADLER
10   FREEMAN & HERZ LLP
   270 Madison Avenue
11 New York, New York 10016
12 Telephone:   212/545-4600
   Facsimile:    212/545-4653
13 *Lead Counsel for Plaintiff on behalf of*
14 *the Davis New York Venture Fund*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Donald Turner, on behalf of the Davis New York Venture Fund,<br><br>              Plaintiff,<br><br>     vs.<br><br>Davis Selected Advisers, L.P. and Davis Distributors, LLC,<br><br>              Defendants. | NO. 4:08-cv-00421-JMR<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM, IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CONCERNING THE UNITED STATES SUPREME COURT DECISION IN *JONES V. HARRIS***<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

PAGE NOS.

I. INTRODUCTION ........................................................................................................- 1 -

II. ARGUMENT ..............................................................................................................- 1 -

    A. The Supreme Court's Decision in *Jones* Rests Upon Its Finding that the Mutual Fund Market Is Not Competitive.  And, It Therefore Concluded that a District Court, After Full Discovery and a Complete Record, Must Consider All Factors in Ruling on a Section 36(b) Claim. ........................................................................- 1 -

    B. Plaintiff's Pleading Standard Here Is Even Lower Than the Summary Judgment Standard Applied in *Jones*..............................................................................- 5 -

    C. The AC's Detailed Allegations Are, Under *Jones*, Ample to Survive Defendants' Motion to Dismiss ........................................................................................- 6 -

    D. The Few Lower Court Decisions Post-*Jones* Support the Conclusion that Defendants' Motion to Dismiss Should Be Denied .............................................- 10 -

III. CONCLUSION .........................................................................................................- 11 -

# TABLE OF AUTHORITIES

**CASES**                                                                                                         **Pages**

*Ameriprise Financial, Inc. v. Gallus*,
   559 U.S. ___, 130 S. Ct. 2340 (2010) .................................................................................. 4-5

*In re Charles W. Siller*,
   427 B.R. 872 (Bankr. E.D. Cal. 2010) ................................................................................... 11

*Curran v. Principal Management Corp. LLC*,
   09 civ. 00433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010) ....................... 10

*Forsythe v. Sun Life Financial, Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) ........................................................................................ 5

*Gallus v. Ameriprise Financial, Inc.*,
   561 F.3d 816 (8th Cir. 2009) ................................................................................................. 4-5

*Gartenberg v. Merrill Lynch Asset Management, Inc.*,
   694 F.2d 923 (2d Cir. 1982) ............................................................................................. *passim*

*Jones v. Harris Associates L.P.*,
   527 F.3d 627 (7th Cir. 2008) .................................................................................................... 2

*Jones v. Harris Associates L.P.*,
   559 U.S. ___, 130 S. Ct. 1418 (2010) ............................................................................. *passim*

*Millenco L.P. v. meVC Advisor, Inc.*,
   01 civ. 142, 2002 U.S. Dist. LEXIS 19512 (D. Del. Aug. 21, 2002) .............................. 6

*Pfeiffer v. Bjurman, Barry & Associates*,
   03 civ. 9741, 2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 27, 2004) ......................... 6

*Siemers v. Wells Fargo & Co.,*
   05 civ. 04518, 2006 U.S. Dist. LEXIS 60858 (N.D. Cal. Aug. 14, 2006) ...................... 5

*Wicks v. Putnam Investment Management, LLP*,
   04 civ. 10988, 2005 U.S. Dist. LEXIS 4892 (D. Mass. Mar. 28, 2005) ......................... 6

## STATUTES & RULES

Investment Company Act of 1940,
   15 U.S.C. § 80(a)-35(b) ("Section 36(b)") ............................................................ *passim*

## OTHER AUTHORITIES

*Brief for John C. Bogle as Amicus Curiae in Support of*
   *Petitioners, Jones v. Harris Associates L.P.*,
   No. 08-586, 2009 WL 1703210 (U.S. June 15, 2009)
   (brief also available through Supreme Court website at
   http://www.abanet.org/publiced/preview/briefs/home.html) ............................................ 9

*Brief for the Investment Company Institute as Amicus Curiae*
   *in Support of Respondent, Jones v. Harris Associates L.P.*,
   No. 08-586, 2009 WL 2896317 (U.S. Sept. 3, 2009)
   (brief also available through Supreme Court website at
   http://www.abanet.org/publiced/preview/briefs/home.html) ............................................ 3

587268

iii

## I.  INTRODUCTION

Pursuant to this Court's September 7, 2010 Order (Dkt. 72), plaintiff submits this supplemental memorandum, discussing the United States Supreme Court's recent decision in *Jones v. Harris Associates L.P.*, 559 U.S. ___ , 130 S. Ct. 1418 (2010) ("*Jones*").

## II.  ARGUMENT

### A.  The Supreme Court's Decision in *Jones* Rests Upon Its Finding that the Mutual Fund Market Is Not Competitive. And, It Therefore Concluded that a District Court, After Full Discovery and a Complete Record, Must Consider All Factors in Ruling on a Section 36(b) Claim.

In *Jones*, the mutual fund defendants (and the mutual fund industry as *amicus*) argued that there was competition in the mutual fund market and, thus, it was unnecessary to give district courts the opportunity to extensively scrutinize mutual fund fees under the Investment Company Act of 1940 ("ICA") §36(b). The Supreme Court rejected that argument. The Court held that given the **lack** of competition in the mutual fund market, (a) mutual fund fees are properly subject to intensive, fact-based scrutiny under §36(b), and (b) the number of relevant factors go far beyond the six specific factors previously identified in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,* 694 F.2d 923, 928 (2d Cir. 1982).[1]

In analyzing the *Jones* lower court decisions, the Supreme Court stated that the *Jones* district court had granted *summary judgment* for the defendants, the investment advisers ("Harris Associates"), on the ground that plaintiffs had failed to raise a triable issue of material fact as to whether the fees charged "'were so disproportionately large that they could not have been the result of arm's-length bargaining.'" 130 S. Ct. at 1424. The lower court had examined many different facts, including comparing the challenged fees with those fees Harris Associates charged its other types of clients (institutional

---

[1] Some federal district and appellate courts have listed six non-exclusive factors in formulating the *Gartenberg* test. See Plaintiff's and Defendants' respective briefs on the motion to dismiss the Amended Complaint, Dkt. 52 at 10 and Dkt. 43 at Section II. B. 1. - B. 6. (six heading on pages 9-16).

clients) and comparing the challenged fees with the fees charged by other investment advisers to mutual funds similar to the Fund. The district court "held that it could not reasonably be found that the challenged fees were outside the range that could have been the product of arm's-length bargaining." *Id.* at 1424. The Seventh Circuit affirmed the district court grant of summary judgment. 527 F.3d 627, 632 (7th Cir. 2008).

In reversing, the Supreme Court squarely rejected the Seventh Circuit's analysis, concluding that the Seventh Circuit had affirmed based upon novel reasoning which had "explicitly 'disapprove[d] the *Gartenberg* approach.'" 130 S. Ct. at 1424, citing 527 F.3d at 632. The Supreme Court described the Circuit Court decision as incorrectly "fault[ing] *Gartenberg* on the ground that it 'relies too little on markets,'" since, according to the Seventh Circuit, sophisticated investors shop for funds, competitive market pressures existed in the mutual fund market which generally kept fees low, and it was improper, as part of any analysis, to compare "the fees that Harris Associates charged to the funds and the fees that Harris Associates charged other types of clients, as it was "hard to draw inferences from fee levels." 130 S. Ct. at 1424.

The Supreme Court concluded that competition in the mutual fund market does not work because the very nature of the mutual fund creates inherent conflicts of interest between the adviser and the Fund since they are not at arm's-length:

> . . . . The adviser selects the fund's directors, manages the fund's investments, and provides other services. See *id.,* at 481, 99 S. Ct. 1831, 60 L. Ed. 2d 404. Because of the relationship between a mutual fund and its investment adviser, the fund often "'cannot, as a practical matter sever its relationship with the adviser. Therefore, the forces of arm's-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy.'" Ibid. (quoting S. Rep. No. 91-184, p. 5 (1969). . . . 'Congress adopted the (Investment Company Act of 1940) because of its concern with the potential for abuse inherent in the structure of investment companies.' *Daily Income Fund*, 464 U.S., at 536, 104 S. Ct. 831, 78 L. Ed. 2d 645. Recognizing that the relationship between a fund and its investment adviser was 'fraught with potential conflicts of interest,' the Act created protections for mutual fund shareholders.

*Jones*, 130 S. Ct. at 1422. Dkt. 52, Pltf's Mem. of Points and Authorities in Opp. to

Defendants' Motion to Dismiss the Amended Complaint at 3-4 ("Dkt 52").  Amended Complaint, Docket 33 ("AC") ¶¶81-84.  The Supreme Court cited its own prior decision as articulating the appropriate fiduciary duty standard:

> The essence of the test is whether or not **under all the circumstances the transaction carries the earmarks of an arm's length bargain**. If it does not, equity will set it aside.

130 S. Ct. at 1427, citing *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939) (emph. in original).

The Supreme Court recognized the broad range of factual issues which are relevant, expressly quoting *Gartenberg's* statement that "all pertinent facts must be weighed," *id*. at 1425, quoting 694 F.2d at 929; *id*. at 1428 (are the independent trustees "fully informed about all facts;" the ICA "requires consideration of all relevant factors").[2]

Thus, the *Jones* Court (a) reaffirmed that a mutual fund's fee structures must be held up to intense factual scrutiny when evaluating a claim under ICA §36(b) for the very reason that market forces do not work in the mutual fund industry; (b) expressly expanded the relevant factors which a court should consider beyond the six listed in *Gartenberg*, and, at the same time, (c) left the door open to the consideration of additional factors as appropriate on a case-by-case basis.  *Jones'* complete, but non-exclusive, list of factors to use in assessing the defendants' fees is:

1. "The adviser-manager's cost in providing the service;"

2. "The extent to which the adviser-manager realizes economies of scale as the fund grows larger;"

3. "The volume of orders which must be processed by the manager;"

4. The nature and quality of the services provided to the fund and shareholders;

---

[2] Even the mutual fund industry trade association conceded before the Supreme Court that, contrary to the Seventh Circuit decision in *Jones*, the original *Gartenberg* factors were not exclusive.  No. 08-586, 2009 WL 2896317 (U.S. Sept. 3, 2009), *Brief for the Investment Company Institute as Amicus Curiae Supporting Respondent* at *2-5, *7-8 (*Gartenberg* "factors were not exclusive") (brief also available through Supreme Court website at http://www.abanet.org/publiced/preview/ briefs/home.html).

1     5.  The profitability of the fund to the adviser;

2     6.  Any "fall-out financial benefits," those collateral benefits that accrue to the adviser because of its relationship with the mutual fund;

4     7.  Comparative fee structure (meaning a comparison of the fees with those paid by similar funds);

6     8.  The "expertise of the independent trustees of a fund;

7     9.  Whether the independent trustees "'are fully informed about all facts bearing on the (investment adviser's) service and fee.'"  130 S. Ct. at 1425-26, 1428, quoting 694 F.2d at 929-32.  "[A]n adviser's compliance or noncompliance with its disclosure obligations is a factor that must be considered in calibrating the degree of deference that is due a board's decision to approve an adviser's fees."  130 S. Ct. at 1430.

12     10.  The extent of care and conscientiousness with which the independent trustees perform their duties;

14     11.  Whether the fees charged the Fund by the defendants were higher or lower than the fees defendants charged other advisory clients, and why.  *Id*. at 1428-29.[3]

16     12.  "The price charged by other similar advisers to funds managed by them" could be taken into account, although the weight given it should be limited because "competition among advisers for the business of managing a fund may be 'virtually non-existent.'"  *Id*. at 1426.[4]

---

[3] *Gartenberg* had "rejected the 'argument that the lower fees charged by investment advisers to large pension funds should be used as a criterion for determining fair advisory fees for money market funds.'"  130 S. Ct. at 1426, citing 694 F.2d at 930 n.3.  The *Jones* Court cast aside this aspect of *Gartenberg*, rejecting a blanket rule, and held that "we do not think that there can be any categorical rule regarding the comparisons of the fees charged different types of clients. . . .  Instead, courts may give such comparisons the weight that they merit in light of the similarities and differences" between them.  *Id*. at 1428-29.

[4] It should be noted that less than a week after its decision in *Jones*, the Supreme Court issued its decision, a Summary Disposition, in *Ameriprise Financial, Inc. v. Gallus*, 559 U.S. ___ , 130 S. Ct. 2340 (2010) ("*Gallus*"), *vacating & remanding Gallus v. Ameriprise Fin., Inc.*, 561 F.3d 816 (8th Cir. 2009), for further consideration in light of *Jones*.  *Gallus* was another Section 36(b) action.  In *Gallus*, the Eighth Circuit had reversed the district (continued…)

- 4 -

Consequently, the Supreme Court in *Jones* rejected defendants' attempt to deny a trial court the right to extensively scrutinize advisory and 12b-1 fees under §36(b).[5]

### B. Plaintiff's Pleading Standard Here Is Even Lower Than the Summary Judgment Standard Applied in *Jones*

As plaintiff noted in an earlier submission to this Court on this motion, a complaint need not address all or even most of the *Gartenberg* factors to survive a motion to dismiss. Dkt. 52, at 11 n.6, citing *Siemers v. Wells Fargo & Co.*, 05 civ. 04518, 2006 U.S. Dist. LEXIS 60858, at *51-52 (N.D. Cal. Aug. 14, 2006) ("Nor must a plaintiff plead facts relative to all the *Gartenberg* factors in order to withstand a motion to dismiss"); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 113-16 (D. Mass.

---

(…continued)
court's grant of summary judgment for defendants, holding that the district court "gave insufficient weight to contested issues of material fact." 561 F.3d at 818.

The *Gallus* appeals court found that, given the inherent "competitive defects of the mutual fund market," 561 F.3d at 821, the district court had placed much too much emphasis on the fact that defendants' fees were comparable to fees charged to similar mutual funds by other advisers, 561 F.3d at 818, and had inappropriately rejected a comparison based upon the fact that the advisory services the defendant adviser provided to the mutual funds was similar if not identical to the services the defendant adviser provided to its institutional clients, yet the mutual fund fees were much higher. For example, the Growth Spectrum III institutional account was a "patterned portfolio" to one of the mutual funds at issue (the New Dimensions fund), meaning that the two accounts had very similar investment objectives and stock holdings. Yet, the New Dimensions mutual fund was charged 150% more than defendants' institutional clients. *Id.* at 819. The Supreme Court itself in *Jones* had cited the *Gallus* lower court opinions as having adopted the *Gartenberg* standard. 130 S. Ct. at 1425 n.2.

[5] *Jones*, which was decided by the district court upon summary judgment, 130 S. Ct. at 1424, emphasizes throughout that the principal purpose of *Gartenberg's* "all the circumstances" test is to address which claims should be weeded out ***on a summary judgment motion before proceeding to trial***. *Jones*, 130 S. Ct. at 1429 n.8; *id*. at 1431 (most lower courts have used *Gartenberg* to "decid[e] which cases may proceed past summary judgment;" Thomas, J., concurring). Defendants ignore that the *Gartenberg* decision itself was the appeal of a judgment entered after a non-jury trial. 694 F.2d at 925, 929-31.

2006); *Wicks v. Putnam Inv. Mgmt., LLP*, 04 Civ. 10988, 2005 U.S. Dist. LEXIS 4892, at *12-13 (D. Mass. Mar. 28, 2005) ("I agree with the plaintiffs that *Gartenberg* -- should it be the appropriate standard--does not establish a heightened pleading requirement for § 36(b) excessive fee claims"); *Pfeiffer v. Bjurman, Barry & Assocs.*, 03 civ. 9741, 2004 U.S. Dist. LEXIS 16924 at *15, *18 (S.D.N.Y. Aug. 27, 2004) (it "is unnecessary for the plaintiff to set forth evidentiary details to support this allegation, or to support those elements of the *Gartenberg* test that may apply to promotion, distribution and service fees"); *Millenco L.P. v. meVC Advisors, Inc.*, 02 Civ. 142, 2002 U.S. Dist. LEXIS 19512, at *9 n.3 (D. Del. Aug. 21, 2002) (same).

The Supreme Court's reiteration of the fact-specific nature of the inquiry under Section 36(b) in a summary judgment context reinforces the impropriety of dismissing such claim upon a Rule 12(b)(6) motion.

### C. The AC's Detailed Allegations Are, Under *Jones*, Ample to Survive Defendants' Motion to Dismiss

Defendants, in their earlier briefs, repeatedly make the bald, and incorrect, statement that the AC makes conclusory statements only and does not allege facts in support of plaintiff's challenge to the excessive fees. To the contrary, for pleading purposes the AC addresses in more than sufficient detail both the *Gartenberg* factors and the many additional factors demonstrating the disproportionate nature of the challenged fees, including those additional factors whose relevance has now been confirmed by *Jones*. The AC's allegations are grouped under the following headings, and sufficiently allege, in full accord with *Jones*, that the fees defendants charged for the services they provided are disproportionately large because there are no unique services rendered.

> A. The Nature and Quality of the Services Provided By the Adviser to the Shareholders, including: (1) The 12b-1 Fees Charged By Defendants Were Almost as Large as the Advisory Fees Charged By Defendants; (2) The Fund Paid For Services Which the Broker-Dealers Were Legally Obligated to Provide Without Payment, AC ¶¶108-27.

B.  The Fund Was Excessively Profitable to the Advisor-Manager, including:  The Amount of the 12b-1 Fees and Advisory Fees Charged By Defendants Were Disproportionate and Excessive in Comparison to the Fees Charged By Other Funds, AC ¶¶139-97.

C.  The Defendants Received Substantial Fall-Out Benefits, including:  (1) Fund Shareholders Paid Excessive and Disproportionate 12b-1 Fees Based Upon the Existence of Multiple Classes of the Fund and Multiple Funds Within the Davis Funds Family, Each of Which Paid for the Same Service Although the Service Was Undivided and Performed Only Once; (2) Transfer Agent Fees Also Constitute Fall-out Benefits, AC ¶¶207-26.

D.  There Were Economies of Scale Achieved and Such Savings Were Not Passed on to Shareholders, including:  (1) Economies of Scale Were Not Passed on to the Fund and Its Shareholders, AC ¶¶227-33; (2) The Fund's Investment Advisory Fee Breakpoints Did Not Confer a Material Benefit Upon Shareholders With Respect to the 12b-1 Fees Paid By Them, AC ¶¶244-55; (3) The Extraordinary Increase in the Size Of The Fund Through the Use of 12b-1 Fees Created Diseconomies of Scale Which Undermined Defendants Ability to Obtain Above-Average Returns, AC ¶¶256-74; (4) The Fund Performed Like an Index Fund, Which Should Have Decreased Costs and Generated Economies of Scale.

E.  The Fund's Fee Structure Is Excessive and Disproportionate in Comparison With Other Similar Funds, including:  (1) The 12b-1 Fees Charged By Defendants Were Excessive and Disproportionate in Comparison to the 12b-1 Fees Charged By Other Comparable Funds Which Were Not Index Funds, AC ¶¶280-95; (2) The Fund Performed Like an Index Fund, But Defendants Charged 12b-1 Fees as if the Fund Were Actively Managed, and Those 12b-1 Fees Were Excessive in Comparison to Index Funds, AC ¶¶275-79, 296-313.

F.  The Independence and Conscientiousness of the Mutual Fund's Outside Directors:  The Fund's Board Breached Its Fiduciary Duty By Continually Approving the Fund's  Advisory and 12b-1 Plans With Virtually No Time Given to Their Consideration and Because There Is No Reasonable Likelihood That the Millions of Dollars of 12b-1 Fees Paid By the Fund and Its Shareholders Will Benefit The Fund and Its Shareholders, AC ¶¶318-33.

G.  For a Number of Years, the 12b-1 Plan Has Not Produced Benefits for the Fund and Its Shareholders, AC ¶¶334-44.

These extensive factual allegations are sufficient to survive a motion to dismiss.

With respect to just a few of the above-listed factors noted in *Jones*, that are raised

- 7 -

1 in the AC, plaintiff adds the following comments.

2 *Jones* noted that the appellate opinion in *Gartenberg* had rejected using a comparison of the fees defendants charged a money market fund to the fees other advisors charged equity funds because the differences between such types of funds might make a comparison "inapt." But, the *Jones* Court rejected a "categorical rule" because, depending upon the types of funds compared, a comparison could in fact be "[]apt." 130 S. Ct. at 1428-29, citing 694 F.2d at 930 n.3. Here, the AC compares the fees charged by the Fund, which is a very large equity fund, to the: (1) 12b-1 and advisory fees charged other large equity funds by other investment advisers, and (2) advisory fees charged by large index funds. These comparisons are "apt." AC ¶¶139-97.

11 First, the Fund is one of the few very large equity funds. The AC appropriately compared the Fund to the following six funds, all of which are equity funds, both index and non-index, which were in the same universe of very large equity funds: Windsor II; Wellington; Dodge and Cox Stock Fund; Dodge & Cox International Stock; Vanguard 500 Index, and Vanguard Total Stock Market Index. AC ¶¶139-97, 291-313. All these funds charge fees that are far less than those charged by the Davis Fund.

17 Second, even though the Fund is a non-index fund, the AC appropriately compares the Fund to large index funds because the Fund performed like an index fund, as if it was passively managed. The Fund essentially tracked the S&P 500 Total Return Index, with a trailing R-squared measure of at least 98 for the past three years, meaning its performance was almost identical to the index. (A fund's "R-squared" figure is a measure of a fund's movement against its particular benchmark index on a scale ranging from 1 to 100. An S&P 500 index fund will have an R-squared number very close to 100 because the fund virtually mirrors the index. AC ¶¶174-77, 296-300.)

25 The fact that the Fund performed as if it was passively managed should have ***decreased*** costs and generated further, significant economies of scale. AC ¶¶275 (incl. heading)-279. Nevertheless, the Fund has charged advisory fees as if it were an actively managed fund, charging approximately $200 ***million*** per year in the last three fiscal

- 8 -

1  years.  AC, *e.g.* ¶¶129, 245.  Those fees were excessive and disproportionate in
2  comparison to both index and actively managed funds.  AC ¶¶291-313.  Moreover, even
3  with a 98 R-squared, the Fund underperformed the S&P Total Return Index during each
4  calendar year beginning January 1, 2006.  On an annualized basis, the Fund has
5  underperformed that S&P Index for at least the last five years.  AC ¶¶349-50.

6        The AC further alleges that the Fund was charged up to twenty times more in 12b-
7  1 fees than comparable funds and up to at least five times more in advisory fees than
8  comparable funds (after grossing up net assets to account for size differences).  AC
9  ¶¶139-93, 308.  The Fund's total net asset weighted expense ratio was between 13 times
10 and 24 times that of a benchmark of index funds.  *Id*. ¶¶194-95.  Comparing the Fund to
11 Vanguard Funds' index funds is relevant because internally managed funds such as
12 Vanguard "face[] no conflict in negotiating the most favorable terms it can get from the
13 investment adviser.  The prices paid by such funds accordingly provide an extremely
14 probative benchmark of arms-length transactions."  *Brief for John C. Bogle as Amicus*
15 *Curiae in Support of Petitioners* at 6, 25, 28 (U.S. filed June 15, 2009) (brief also
16 available through Sup. Ct. website at http://www.abanet.org/publiced/preview/briefs/
17 home.html).  Thus, unlike in *Gartenberg* where the comparison was between a money
18 market fund and equity funds, the comparisons here are apples-to-apples ones.

19       With respect to economies of scale, the AC alleges that the 12b-1 fees and
20 advisory fees increased at the same rate or faster than the Fund's net assets, and the dollar
21 amount of such increase was astronomical (AC ¶¶129, 234-43); the Fund's breakpoints
22 did not confer a material benefit upon the shareholders with respect to the advisory fee
23 (AC ¶¶244-55), and the Fund had grown so large that it "morphed" into an expensive
24 index fund which decreased its ability to obtain above-average returns for the
25 shareholders.  In addition, as a result of its huge size, further growth in the Fund did not
26 generate additional material economies of scale for the Fund and its shareholders.  AC
27 ¶¶256-60.  As the 25th largest mutual fund in the United States, defendants charged the
28 Fund and its shareholders the ninth largest 12b-1 fees.  AC ¶283.  Defendants were the

only beneficiaries of this huge increase in Fund assets under management, which resulted from using part of the 12b-1 fee to increase distribution of Fund shares.  Defendants reaped a materially larger advisory fee – at least $40 million to $60 million more per year (and materially increased Transfer Agent fees) -- merely based upon the increase in the size of the Fund, an increase in size which the Fund and its shareholders consistently paid over $150 million per year to finance without any corresponding benefit.  AC ¶¶256-60.[6] Under these facts, a reasonable fact-finder could certainly conclude that the so-called independent trustees did not fulfill their fiduciary duties.

*Jones* holds that to be liable under ICA section 36(b) an "investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered" and does not "under all the circumstances . . . carr[y] the earmarks of an arm's length bargain."  130 S. Ct. at 1426-27.  The Supreme Court's decisions in *Jones* and *Gallus* prove that defendants' argument (Dkt. 43 *passim*) that the AC does not sufficiently allege disproportionality is utterly meritless.

### D. The Few Lower Court Decisions Post-*Jones* Support the Conclusion that Defendants' Motion to Dismiss Should Be Denied

In the wake of *Jones*, there are two lower court decisions, one directly on point and one additional decision, both of which support the conclusion that defendants' motion to dismiss here should be denied.  *Curran v. Principal Mgmt. Corp.*, LLC, 09 Civ. 433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010) (defendants' motion to

---

[6] Likewise, the AC also alleges the 12b-1 fees were disproportionate because (among other reasons) over 50% of the close to $200 million in 12b-1 fees annually charged the Fund were for post-sale shareholder services which the broker-dealers were legally obligated to provide to Fund shareholders in any event because they were for (inter alia) required suitability and operational functions which the broker-dealers were legally obligated to perform.  AC ¶¶123-27.  Where a broker-dealer is required by regulation to provide such services, it is crystal clear that scores of millions of dollars in 12b-1 fees are disproportionately large because such a "transaction [does not] carr[y] the earmarks of an arm's length bargain."  130 S. Ct. at 1427.

dismiss Section 36(b) claims denied as to claims one and three concerning, respectively, the advisory fee and the 12b-1 fee); *cf. In re Charles W. Siller*, 427 B.R. 872, 882 (Bankr. E.D. Cal. 2010) (citing *Jones* and *Pepper, supra,* for proposition that burden of proof is on the insider who would defend the validity of the transaction).

## III.   CONCLUSION

For the reasons set forth above and in plaintiff's earlier submissions, defendants' motion to dismiss the AC should be denied in its entirety.

DATED:  September 27, 2010

                                Respectfully submitted,

                                WOLF HALDENSTEIN ADLER
                                  FREEMAN & HERZ LLP

                                By:  /s/ Robert B. Weintraub
                                Daniel W. Krasner
                                Robert B. Weintraub
                                270 Madison Avenue
                                New York, New York 10016
                                Telephone:  (212) 545-4600
                                Facsimile:   (212) 545-4653
                                *Lead Counsel for Plaintiff on behalf of*
                                *the Davis New York Venture Fund*

                                Francis J. Balint, Jr.
                                BONNETT, FAIRBOURN, FRIEDMAN & BALINT
                                2901 N. Central Avenue, Suite 1000
                                Phoenix, AZ 85012
                                Telephone:  (602) 274-1100
                                Facsimile:  (602) 274-1199
                                Local Counsel for Plaintiff

573813v11