Francis J. Balint, Jr.  (007669)
BONNETT FAIRBOURN FRIEDMAN
 & BALINT, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone:  602/274-1100
Facsimile:   602/274-1199
*Local Counsel for Plaintiff*

Daniel W. Krasner  (*Admitted Pro Hac Vice*)
Krasner@whafh.com
Robert B. Weintraub  (*Admitted Pro Hac Vice*)
Weintraub@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Telephone:   212/545-4600
Facsimile:    212/545-4653
*Lead Counsel for Plaintiff on behalf of
the Davis New York Venture Fund*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Donald Turner, on behalf of the Davis New York Venture Fund,<br><br>              Plaintiff,<br>     vs.<br><br>Davis Selected Advisers, L.P. and Davis Distributors, LLC,<br><br>              Defendants. | NO. 4:08-cv-00421-JMR<br><br>**PLAINTIFF'S REPLY MEMORANDUM, PURSUANT TO THE COURT'S SEPTEMBER 7, 2010 ORDER, IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, CONCERNING THE UNITED STATES SUPREME COURT DECISION IN *JONES V. HARRIS***<br><br>ORAL ARGUMENT REQUESTED |

TABLE OF CONTENTS

PAGE NOS.

I. INTRODUCTION ..................................................................................................- 1 -

II. THE MOTION TO DISMISS THE 12B-1 CLAIM SHOULD BE DENIED ..................- 2 -

    A. The Detailed Allegations of the AC Allege Disproportionality ...........................- 2 -

    B. Defendants' Straw Man Argument Concerning Net Redemptions, and the Astronomical Growth of the Fund From Which Only Defendants' Obtained Material Benefits ..............................................................................................- 3 -

    C. Defendants Misrepresent the Case Law When Claiming that Rule 12b-1 Fees Are Outside the Ambit of Section 36(b) ...................................................................- 4 -

III. THE MOTION TO DISMISS THE ADVISORY FEE CLAIM SHOULD BE DENIED- 6 -

    A. The Nature and Quality of Services Provided .......................................................- 6 -

    B. Defendants Make No Argument Concerning Profitability ...................................- 7 -

    C. Defendants' Arguments Concerning Fall-Out Benefits Are Conclusory ...............- 8 -

    D. Defendants Make No Arguments Concerning Economies of Scale ......................- 8 -

    E. Defendants Misrepresent the *Jones* Fee Structure Comparison ............................- 8 -

    F. Defendants Incorrectly Claim that the AC Alleges Director Independence and Conscientiousness as a Separate Claim .................................................................- 9 -

IV. CONCLUSION ........................................................................................................- 10 -

1

TABLE OF AUTHORITIES

2

3 **CASES**                                                                                                                        **Pages**

4

*Ameriprise Financial, Inc. v. Gallus*,
5  559 U.S. ___, 130 S. Ct. 2340 (2010) ....................................................................... 5, 9

6
*Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338 (2d. Cir. 2006) ..................... 6

7
*Curran v. Principal Management Corp. LLC*,
8  09 civ. 00433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010) .................... 9-10

9
*Gallus v. Ameriprise Fin.*, 497 F. Supp. 2d 974, 978 (D. Minn., 2007),
10   *reversed*, 561 F.3d 816 (8th Cir. 2009) ........................................................................ 5

11
*Gallus v. Ameriprise Financial, Inc.*,
12  561 F.3d 816 (8th Cir. 2009) .......................................................................................... 5

13
*Gartenberg v. Merrill Lynch Asset Management, Inc.*,
14  694 F.2d 923 (2d Cir. 1982) ................................................................................. *passim*

15
*Green v. Nuveen Advisory Corp.*,
16  186 F.R.D. 486 (N.D. Ill. 1999) ..................................................................................... 5

17
*In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677 (D.N.J. 2007) ......................... 6
18

19 *Jones v. Harris Associates L.P.*,
   559 U.S. ___, 130 S. Ct. 1418 (2010) ................................................................. *passim*
20

21 *Meyer v. Oppenheimer Management Corp.*,
   764 F.2d 76 (2d Cir. 1985) ............................................................................................ 5
22

23 *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321 (4th Cir. 2001) ............................ 6

24 *Northstar Fin. Advisers, Inc. v. Schwab Inv.*, – F.3d – ,
   2010 WL 3169400 (9th Cir. Aug. 12, 2010) ................................................................ 10
25

26 *Pfeiffer v. Bjurman, Barry & Associates*,
   03 civ. 9741, 2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 27, 2004) ...................... 5-6
27

28

## OTHER AUTHORITIES

Investment Company Act of 1940,
15 U.S.C. § 80(a)-35(b) ("Section 36(b)") ................................................................ *passim*

Brief for the Investment Company Institute as *Amicus Curiae* Supporting Respondent, *Jones v. Harris*, No. 08-586, 2009 WL 2896317 (U.S. Sept. 3, 2009) (brief also available through Supreme Court website at http://www.abanet.org/publiced/preview/ briefs/home.html).................................................................................................................. 1

ICA Release 16431 (Securities & Exchange Commission) ................................................. 5

Bearing of Distribution Expenses by Mutual Funds, Investment Company Act Release No. 10,252 [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 81,603 ..................................... 5

SEC Report, Public Policy Implications of Investment Company Growth, H.R. Rep. No. 2337, 89th Cong., 2d Sess. 144 (1966).............................................................................. 5

## I.  INTRODUCTION

Pursuant to this Court's September 7, 2010 Order (Dkt. 72), plaintiff submits this supplemental reply memorandum, addressing the United States Supreme Court's recent decision *Jones v. Harris Associates L.P.*, 559 U.S. ___ , 130 S. Ct. 1418 (2010) ("*Jones*"). Plaintiff incorporates his prior submissions opposing the motion to dismiss, Dockets 52, 60-61, 64, and 74.

Plaintiff respectfully submits that defendants' opening brief (Dkt. 73, "DBr. *Jones*") does not address *Jones*. Indeed, from their brief one would assume *Jones* affirmed rather than reversed the Seventh Circuit's grant of summary judgment.

Perhaps defendants have refused to address *Jones* because it is the latest in a long line of Investment Company Act of 1940 ("ICA") section 36(b) decisions which support plaintiff's right to proceed with discovery and ultimately a trial on the merits of his claims. *Jones* itself was decided upon summary judgment and the Supreme Court reversed the Seventh Circuit's grant of judgment for defendants.

Instead of analyzing *Jones*, defendants simply repeat their prior briefs, offering the same stale arguments in the exact same order. Defendants' main comment concerning *Jones* is that *Jones* confirms *Gartenberg*.[1] DBr. *Jones* at 4 ("*Jones* confirms"), 5 ("*Jones* quotes *Gartenberg*," "*Jones* underscores"). Plaintiff does not dispute that *Jones* reaffirms the applicability of the *Gartenberg* factors, while simultaneously and expressly expanding those factors. *Jones passim*. Dkt. 74 *passim*. Indeed, defendants implicitly concede that the applicable factors now extend far beyond *Gartenberg*.[2]

Defendants have repeatedly mischaracterized the allegations of the AC. They

---

[1] *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982).

[2] The mutual fund industry trade association conceded before the Supreme Court that, contrary to the Seventh Circuit decision in *Jones*, the original *Gartenberg* factors were not exclusive. *See* No. 08-586, 2009 WL 2896317 (U.S. Sept. 3, 2009), Brief for the Investment Company Institute as Amicus Curiae Supporting Respondent at *2-5, *7-8 (*Gartenberg* "factors were not exclusive") (brief also available through Supreme Court website at http://www.abanet.org/publiced/preview/ briefs/home.html).

repeat the mantra that plaintiff does not allege the disproportionality of the fees and expenses and the excessiveness of these fees, both of which are alleged in great detail. See, *infra*. Defendants repeatedly ignore the AC's detailed allegations of fact supporting each element of plaintiff's claims which belie their mantra. Plaintiff urges the Court to review the AC.

Defendants' brief contains so many misstatements that it is almost impossible to point out all of them, but we will address the most significant below.

## II. THE MOTION TO DISMISS THE 12B-1 CLAIM SHOULD BE DENIED

### A. The Detailed Allegations of the AC Allege Disproportionality

Defendants, in their brief (DBr. *Jones* at 8), as well as in every one of their prior submissions, make the conclusory statement that plaintiff fails to allege disproportionality; but, defendants reference only 17 of the 385 numbered paragraphs in the AC containing allegations of fact. Defendants can claim that two plus two equals five, but that does not make it so.

The AC contains the threshold allegation (AC ¶3) that [t]his action seeks to recover for the Fund "excessive and disproportionate" 12b-1 fees and investment advisory fees paid by the Fund. It repeats that allegation in at least 26 additional paragraphs (not counting headings). AC ¶¶16-18, 95, 117, 127, 197, 203, 220-21, 276, 288, 331, 332, 345, 357-58, 380, 382, 384, 389, 394, 397-98, 406-07. In every instance, the "excessive and disproportionate" allegation is either preceded by or followed by multiple paragraphs alleging facts supporting that claim. Defendants choose to ignore all these allegations.

The AC addresses in great detail and with many supporting facts all the *Gartenberg* factors, and many additional factors including those identified in *Jones*. These factual allegations are grouped under the following headings:

A. The Nature and Quality of the Services Provided By the Adviser to the Shareholders.  AC ¶¶108-27.

- 2 -

B.  The Fund Was Excessively Profitable to the Advisor-Manager.  AC ¶¶129-97.

C.  The Defendants Received Substantial Fall-Out Benefits.  AC ¶¶198-26.

D.  There Were Economies of Scale Achieved and Such Savings Were Not Passed on to Shareholders.  AC ¶¶227-79.

E.  The Fund's Fee Structure Is Excessive and Disproportionate in Comparison With Other Similar Funds.  AC ¶¶280-313.

F.  The Lack of Independence and Conscientiousness of the Mutual Fund's Outside Directors.  AC ¶¶318-33.

G.  There Are No Problems or Circumstances Which Make the Continuation of the 12b-1 Plan Necessary or Appropriate, AC ¶¶334-41.

H.  For a Number of Years, the 12b-1 Plan Has Not Produced Benefits for the Fund and Its Shareholders, AC ¶¶342-44.

These extensive factual allegations are discussed in greater detail in plaintiff's prior submissions including Docket 52 *e.g.* at 8-9 and Docket 74 at 6-7.  These allegations clearly allege disproportionality in great detail.

**B.    Defendants' Straw Man Argument Concerning Net Redemptions, and the Astronomical Growth of the Fund From Which Only Defendants' Obtained Material Benefits**

Plaintiff alleges that the 12b-1 plans were not needed because (among other reasons) defendants suffered no net redemption problem and the Fund would have performed better if it had been smaller.  AC ¶¶256-74, 334-41.  Defendants erect a straw man, arguing that plaintiff's contentions are irrelevant because distribution fees "are not paid in exchange for investment results and services – they are paid for marketing, distribution, and ongoing shareholder services."  DBr. *Jones* at 8-9.

Defendants' argument is misleading.  Rule 12b-1 was adopted in order to permit the marketing of a fund in order to increase its size, but there had to be a benefit to the Fund and its shareholders.  The AC cites the factual and legislative history of this decision.  AC ¶¶85-89.  Accordingly, the AC's allegation that defendants suffered no net

- 3 -

1  redemption problem is relevant to assessing whether the 12b-1 fees were necessary, let
2  alone disproportionately large.³  Moreover, plaintiff alleges that the huge increase in
3  Fund size created economies of scale which were not materially passed on to the Fund
4  and its shareholders through reduced fees as the Fund grew in size.  AC ¶¶227-55.
5        Since defendants' advisory fees were a percentage of the Fund, as the Fund grew
6  larger, defendants' advisory fees grew astronomically.  The AC alleges that "[t]he only
7  beneficiaries of this huge increase in fund assets under management, which resulted in
8  part from using part of the 12b-1 fee to increase distribution of the shares, were the
9  defendants. They reaped a materially larger advisory fee – at least $40 million to $60
10 million more per year (and materially increased Transfer Agent fees) -- merely based
11 upon the increase in the size of the Fund, an increase in size which the Fund and its
12 shareholders consistently paid over $150 million per year to finance but received no
13 benefit therefrom."  AC ¶¶256-61.  These factual allegations are representative of the
14 entire pleading which defendants want this Court to ignore.

### C. Defendants Misrepresent the Case Law When Claiming that Rule 12b-1 Fees Are Outside the Ambit of Section 36(b)

In every brief they have filed on this motion to dismiss, defendants have asserted that ICA Section 36(b) does not apply to Rule 12b-1 distribution fees.  This is a misrepresentation of the applicable law.  Defendants do not cite to even one decision in support of their novel contention.

---

³ Likewise, the AC also alleges the 12b-1 fees were disproportionate because over 50% of the close to $200 million in 12b-1 fees annually charged the Fund were for post-sale shareholder services which the broker-dealers were legally obligated to provide to Fund shareholders in any event because they were for (inter alia) required suitability and operational functions which the broker-dealers were legally obligated to perform.  AC ¶¶123-27.  Where a broker-dealer is required by regulation to provide such services, it is crystal clear that scores of millions of dollars in 12b-1 fees are disproportionately large because such a "transaction [does not] carr[y] the earmarks of an arm's length bargain."  130 S. Ct. at 1427.

- 4 -

1    Defendants argue that *Jones* did not address whether ICA section 36(b) applies to
2 12b-1 fees.  But, many other court decisions have held that section 36(b) applies to a 12b-
3 1 fee claim.  Both the *Gallus* district and appeal courts applied section 36(b) to an
4 excessive 12b-1 fee claim, but reached different conclusions as to the result.  *Gallus v.*
5 *Ameriprise Fin.*, 497 F. Supp. 2d 974, 978 (D. Minn., 2007) (summary judgment granted
6 for defendants), *reversed and remanded*, 561 F.3d 816 (8th Cir. 2009).  (The Supreme
7 Court did not hold that ICA section 36(b) was inapplicable to the *Gallus* 12b-1 fee claim,
8 but merely remanded *Gallus* for reconsideration in light of *Jones*.)
9    The SEC and the courts have expressly rejected defendants' narrow view and
10 instead have repeatedly applied §36(b) to 12b-1 fees to assess whether a defendant has
11 breached its fiduciary duty.  *E.g.*, *Meyer v. Oppenheimer Mgmt. Corp. ("Meyer I")*, 764
12 F.2d 76, 82 (2d Cir. 1985), *citing* SEC Report, Public Policy Implications of Investment
13 Company Growth, H.R. Rep. No. 2337, 89th Cong., 2d Sess. 144 (1966).  *Accord, e.g.*,
14 Plaintiff's Opp. to Motion to Dismiss, Dkt. 52 at 11 n.6, 26 (citing cases).
15    Significantly, in the context of defendants' argument that 12b-1 fees essentially
16 are *per se* lawful, in proposing Rule 12b-1 (Dkt. 17 at 8-12), the SEC emphasized that the
17 Rule was not intended "to reduce or limit in any way" the fiduciary duties imposed by
18 section 36(b).  *Meyer I*, at 82-83, *citing* Bearing of Distribution Expenses by Mutual
19 Funds, Investment Company Act Release No. 10,252 [1978 Transfer Binder] Fed. Sec. L.
20 Rep. (CCH) P 81,603, at 80,415.  *See Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486,
21 491 (N.D. Ill. 1999).  NASD rules are subject to the requirements of Rule 12b-1, which
22 does not establish a safe harbor from §36(b) liability.  ICA Release 16431 at 40 n.128.
23    Tellingly, in their most recent briefs, including DBr. *Jones* at 9-11, defendants
24 have not reiterated the citation in their initial motion papers (Dkt. 17 at 8-12) to *Pfeiffer v.*
25 *Bjurman, Barry & Associates*, 03 civ. 9741, 2004 U.S. Dist. LEXIS 16924, at **17-18
26 (S.D.N.Y. Aug. 27, 2004).  Defendants had argued that the fees disputed were "expressly
27 authorized" and thus *per se* lawful.   But the *Pfeiffer* court denied the motion to dismiss
28 the ICA 36(b) claim, expressly rejecting defendants' *per se* reasonable analysis, even

where the 12b-1 fee was below the regulatory cap:

> The defendants heavily rely on the argument that, because the Plan caps its *Rule 12b-1* fees at 0.25% of the Fund's average daily net assets . . . the maximum asset-based charge allowed by the SEC -the fees are *per se* reasonable. The defendants cite no case law for this proposition. Should the plaintiff succeed in showing that the fees were excessive when measured against the services rendered, the defendant will not be able to defeat that showing by arguing that they could have charged even more.

*Id*. Nevertheless, defendants again repeat their earlier, wholly unsupported argument.

## III. THE MOTION TO DISMISS THE ADVISORY FEE CLAIM SHOULD BE DENIED

### A.   The Nature and Quality of Services Provided

Defendants "analyze" *Jones* and the nature and quality of services provided in two short paragraphs. DBr. *Jones* at 4. The two paragraphs contain no analysis at all.

Concerning advisory fees, the Fund underperformed the S&P Total Return Index during each calendar year beginning January 1, 2006. And, on an annualized basis, the Fund has underperformed that S&P Index for at least the last five years. In addition, the Fund has acted like an index fund, with an R-squared measure of at least 98 for the past three years. Nevertheless, the Fund has charged advisory fees as if it were an actively managed fund, charging approximately $200 *million* per year in the last three fiscal years. In 2007 and 2008, the Fund's total net asset weighted expense ratio was 13.5 times and 24.4 times that of a benchmark of index funds, respectively. AC ¶¶129, 194-95, 349-58.[4]

---

[4] In all their briefs, defendants cite *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007), *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001) and *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 345 (2d. Cir. 2006). DBr. *Jones* at 4, 7. All are distinguishable. In *Franklin*, plaintiffs made "only one allegation" concerning the services rendered by defendants and "did not address in any way the relationship between the fees . . . received and the services . . . provided." The AC makes scores of allegations concerning the services rendered. AC, *e.g.*, ¶¶97-138, 194-95, 207-22, 349-58. In *Amron*, 464 F.3d at 345, the only allegation was that fees increased as the size of the Fund increased. The AC alleges that the fees increased either in the same or greater proportion than the increase in the size of the Fund, combined with allegations (continued…)

- 6 -

### B. Defendants Make No Argument Concerning Profitability

Defendants next claim the AC does not address profitability. Dkt. 73 at 4.

Plaintiff alleges that defendants' 12b-1 and Advisory Fees totaled more than $1 *billion* over three years. In its fiscal year 2006, the 12b-1 fees paid by the Fund were approximately $155 *million* and the advisory fees paid were approximately $166 *million*, for a total for 2006 of approximately $321 *million*. In its 2007 fiscal year, the 12b-1 fees paid by the Fund were at least $180 *million* and the advisory fees paid were approximately $211 *million*, for a total for 2007 of at least $391 *million*. Similarly, for its 2008 fiscal year, 12b-1 fees were approximately $174 *million* and advisory fees were approximately $223 *million*, for a total for 2008 of $397 *million*. AC ¶129. Thus, in just the last three fiscal years, the Fund paid more than $1.1 *billion* total in 12b-1 and advisory fees, of which at least $509 *million* was 12b-1 fees. These fees grew dramatically over this time period without any concomitant growth in costs to defendants. This greatly increased defendants' profitability, which profits were not shared with the Fund and its shareholders. AC ¶¶128-97.

Concerning advisory fees, as discussed above, the Fund has underperformed the S&P Total Return Index since before the beginning of the damages period of this action. Despite acting as an index fund (with a 98 R-Square measure), the Fund has charged advisory fees as if it were an actively managed fund, charging approximately $200 *million* per year in the last three fiscal years. In 2007 and 2008, the Fund's total net asset weighted expense ratio was 13.5 times and 24.4 times that of a benchmark of index funds, respectively. AC ¶¶129, 194-95, 349-58. These facts demonstrate excessive and

---

(…continued)
describing the decreasing costs over time in the securities industry. AC ¶¶227-43. In *Migdal*, 248 F.3d at 327, the court suggested that fund underperformance for short periods of time was of limited usefulness. In their prior briefs, defendants claim that the Fund outperformed the S&P 500 over a ten year period, while the AC alleges that the Fund underperformed the index for the last five years. As with many of defendants' factual contentions, which of these proffered facts is accurate and which is more probative of defendants' conduct are questions appropriate for trial, and not a motion to dismiss.

disproportionate profitability under *Jones* and *Gartenberg*.

### C. Defendants' Arguments Concerning Fall-Out Benefits Are Conclusory

Defendants essentially ignore the fall-out benefit issue. They claim that most but not all fall-out benefits are received by an unaffiliated third party. Even if some benefits were received by an unaffiliated third party, defendants concede that at least some benefits were received by affiliated entities. Dkt. 73 at 4-5.

The AC contains numerous allegations concerning fall-out benefits, including that as to the advisory fee, the defendants received transfer agent fees and 12b-1 fees which were fall-out benefits in the context of the advisory fee. AC ¶¶199-203, 248, 359-67.

### D. Defendants Make No Arguments Concerning Economies of Scale

Defendants "analyze" Jones and the economy of scale issue in two short paragraphs by quoting *Jones* quoting *Gartenberg* and then noting that *Jones* cites cases which defendants cited in their earlier briefs. DBr. *Jones* at 5. The two paragraphs contain no analysis whatsoever. Plaintiff's brief, Docket 74, at 9-10, contains an analytical discussion of the economies of scale issue in the context of *Jones*. The AC contains over 50 paragraphs concerning economies of scale. AC ¶¶227-79. See, *supra*.

### E. Defendants Misrepresent the *Jones* Fee Structure Comparison

Defendants claim that, based upon *Jones*, plaintiffs attempt to compare the Fund's fee for active portfolio management with the fees charged by passively managed index funds is "frivolous." DBr. *Jones* at 5. Defendants' argument misrepresents *Jones*.

In plaintiff's brief on *Jones* (at 8-9), there is an extensive discussion of why the Supreme Court found it would be "apt" – relevant -- to compare the fees charged by the Fund, which is a very large equity fund, to the: (1) 12b-1 and advisory fees charged other large equity funds by other investment advisers, and (2) advisory fees charged by large index funds. Dkt. 74 at 8-9. Since the compared funds are of roughly the same size, and

the Fund itself acts like an index fund with an R-squared measure of 98, essentially identical to an S&P 500 index fund, the comparison is relevant.

The defendants misleadingly argue that the AC "concedes that the Fund charges retail investors and sophisticated *accredited* investors exactly the same advisory fee," and hence the advisory fee claim should be dismissed. DBr. *Jones* at 6. This is another of defendants' straw men. The proper comparison is between Fund investors and institutional accounts not "accredited" investors. *Jones*, *Gallus* and plaintiff's brief all note that it is a relevant factor to compare the fees charged a fund like the Fund with the fees the adviser charges its **institutional** clients (such as pension funds). 130 S. Ct. at 1424, 1428-29. Dkt. 74 at 1-2, 5 n.4.

### F. Defendants Incorrectly Claim that the AC Alleges Director Independence and Conscientiousness as a Separate Claim

Defendants misleadingly state that "*Jones* squarely rejected any suggestion that a flaw in board process is an independent basis for liability." DBr. Jones at 6, 8. But, plaintiff has always asserted that "[t]he extent of care and conscientiousness with which the independent trustees perform their duties," Dkt. 74 at 4, no. 10, is one element of the advisory fee and 12b-1 fee claims here (AC ¶¶314-33, 381-84, 394 (vi), 406 (vi)) and have never asserted director conduct as a separate claim.

Nor are plaintiff's allegations broad challenges on the mutual fund industry requiring dismissal, as defendants claim. DBr. *Jones* at 7. Indeed, in the post-*Jones* decision *Curran v. Principal Mgmt. Corp.*, LLC, 09 Civ. 433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010), defendants there argued "that Count I of the Amended Complaint [the advisory fee claim] is composed of generalized criticisms of the mutual fund industry as a whole and lacks sufficiently detailed factual allegations to survive Defendants' Rule 12(b)(6) Motion." *Id*. at *31. The court there rejected defendants' argument and denied the motion to dismiss, stating that "the Amended Complaint more

than adequately states a § 36(b) claim." *Id*. at *34.[5] The AC here is far more detailed than the amended complaint sustained in *Curran*. *Id*. at *31, *40 (one-third the number of paragraphs and apparently only ten paragraphs concern 12b-1 fees).[6]

## IV.   CONCLUSION

For the reasons set forth above and in plaintiff's earlier submissions, defendants' motion to dismiss the AC should be denied in its entirety.

DATED:  October 4, 2010

                                Respectfully submitted,

                                WOLF HALDENSTEIN ADLER
                                  FREEMAN & HERZ LLP

                                By:  /s/ Robert B. Weintraub
                                Daniel W. Krasner
                                Robert B. Weintraub
                                270 Madison Avenue
                                New York, New York 10016
                                Telephone:   (212) 545-4600
                                Facsimile:    (212) 545-4653
                                *Lead Counsel for Plaintiff on behalf of*
                                *the Davis New York Venture Fund*

                                Francis J. Balint, Jr.

---

[5] *Curran* also supports the conclusion that plaintiff has standing to bring his claim for all 12b-1 fees charged the Fund. *Id*. at *14-*27 (rejecting defendants' argument that standing requires plaintiffs own each "series" of the fund). If the *Curran* plaintiffs had standing to bring their 12b-1 claim then, *a fortiori*, plaintiff here has standing to bring his claim for all 12b-1 fees including the 0.75% distribution fee which is assessed against class B and C shares but not against class A shares. See pltf's standing brief, Dkt. 64.

[6] Defendants cite (DBr. *Jones* at 3 n.1, 11) *Northstar Fin. Advisers, Inc. v. Schwab Inv*., – F.3d – , 2010 WL 3169400, at *10 (9th Cir. Aug. 12, 2010). The citation at note 1 does not explain why *Northstar* is cited. Defendants cite *Northstar* at page 11 for the proposition there is no private right of action under ICA sections 47(b) or 48(a). But, *Northstar* addressed only a §13(a) claim and not §§47(b) or 48(a). See Pltfs. Main Br. in Opp. to Motion, Dkt. 52 at 33-35 for an analysis of the section 47 and 48 claims.

| | |
|---|---|
| 1 | BONNETT, FAIRBOURN, FRIEDMAN & BALINT |
| 2 | 2901 N. Central Avenue, Suite 1000 |
|   | Phoenix, AZ 85012 |
| 3 | Telephone:  (602) 274-1100 |
|   | Facsimile:  (602) 274-1199 |
| 4 | Local Counsel for Plaintiff |

587981v6